### HOUSTON & T. C. R. CO. v. WALKER.
### (No. 1313.)

(Court of Civil Appeals of Texas. Texarkana. April 30, 1914.)

1. ACTION (§ 45*) — JOINDER OF CAUSES OF ACTION—PLEADING.

In view of Rev. St. 1911, art. 5686, providing that, where injuries for which plaintiff sought a recovery were not those which caused his death, his heirs, in the absence of any administration or necessity therefor, might make themselves parties to and prosecute the original suit, his surviving children, if doubtful as to what the proof would establish regarding the real cause of death, might frame their petition for a recovery for injury causing his death, or for his death from some other cause; and the addition of such a count might be made by way of amendment in accordance with the rules of practice.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 378-383, 385-448; Dec. Dig. § 45.*]

2. APPEARANCE (§ 19*)—ANSWER—JURISDICTION.

Defendant, by answering the original petition in an action for personal injuries, submitted itself to the jurisdiction of the court.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 79-82, 84-90; Dec. Dig. § 19.*]

3. APPEARANCE (§ 13*)—ANSWER—NOTICE OF AMENDMENT.

A defendant, whose answer to the original petition, in an action for personal injury, submits itself to the jurisdiction of the court, is bound to take notice of all amendments filed thereafter in term time under appropriate orders.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. § 65; Dec. Dig. § 13.*]

4. APPEARANCE (§ 19*)—WAIVER OF PROCESS—STATUTE.

Rev. St. 1911, art. 1882, provides that the filing of an answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him. Rule 7 for district and county courts (142 S. W. xvii) declares that the answer may consist of pleas to the jurisdiction, in abatement or privilege or any other dilatory plea. In an action for personal injury, with amended petition after plaintiff's death seeking to recover as his surviving children, or as his heirs in case the alleged injury did not result in his death, defendant answered the original suit, and objected to the amended petitions because of misjoinder of the causes of action therein, but appeared by attorney in the trial and examined witnesses upon all the issues involved. Held, that defendant had submitted itself to the jurisdiction of the court for the rendition of any judgment which the pleadings and the evidence justified.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 79-82, 84-90; Dec. Dig. § 19.*]

**5. DEATH (§ 99*)—DAMAGES—EXCESSIVE DAMAGES.**

In an action by the surviving children of one whose injury resulted in his death, brought under the death statute, which leaves the estimate of benefits which they might expect from the deceased to the sound discretion of the jury, the jury might assume that adult children who were earning money for themselves might have outlived the parent and have received material benefits from his continued life, and hence a verdict of $1,000 for each of them was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

**6. CARRIERS (§ 318*)—INJURY TO MAIL CLERK — SUFFICIENCY OF EVIDENCE — NEGLIGENCE.**

Evidence, in an action by the surviving children of a railway mail clerk for injury from being struck by a falling letter box, resulting in his death, *held* to show that the defendant railroad was negligent in furnishing a defective car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

**7. CARRIERS (§ 318*)—ACTION BY SURVIVING CHILDREN—SUFFICIENCY OF EVIDENCE—INSPECTION.**

Evidence, in such action, *held* to show that the defendant was negligent in failing to inspect and repair the car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

**8. TRIAL (§ 191*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

In an action for personal injury to a railway mail clerk from a falling letter box, continued after his death by his surviving children, an instruction that if defendant railroad was negligent in furnishing him with a defective car, or in failing to inspect it and discover and repair such defects, or in repairing them, which negligence, if any, was the direct and proximate cause of the injury, plaintiffs might recover, but that if defendant's negligence, in any of such particulars, was not the direct and proximate cause of the injury, defendant was not liable, was objectionable as assuming that the defendant furnished a defective car and failed to inspect it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

**9. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—INSTRUCTION ON WEIGHT OF EVIDENCE.**

In such action, where the evidence showed defendant's negligence in furnishing a defective car and in failing to inspect it, an instruction assuming such negligence was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Action by T. B. Walker, prosecuted after his death by Camille Walker and Fount Walker, for themselves and as next friends of their minor sisters, as heirs and survivors of deceased, against the Houston & Texas Central Railroad Company. Judgment for plaintiffs as surviving children, and defendant appeals. Affirmed.

Head, Smith, Maxey & Head, of Sherman, for appellant. Wolfe, Wood & Haven, of Sherman, for appellees.

HODGES, J. On September 12, 1912, T. B. Walker filed a suit against the appellant, in which he sought to recover damages for personal injuries received while riding in one of appellant's trains. The petition alleged that on or about the 20th of October, 1910, Walker was a mail clerk employed by the United States government in its railway mail service; his run being from Denison to Houston in Texas, over the defendant's line of railway. In the mail car in which the plaintiff was riding was a large letter box used in the mail service. On the date mentioned above, while traveling from Houston to Denison, this box fell on the plaintiff and inflicted serious bodily injuries which are fully described. Three grounds of negligence are charged: (1) Furnishing a defective car; (2) a failure to inspect and repair the defects; (3) insufficient repairing after the defects had been reported. It was further alleged that prior to his injuries plaintiff was a healthy man 47 years of age, and was at that time earning $1,500 per year, with prospects of promotion; that on account of his injuries he had lost considerable time, and his ability to work in the future had been greatly impaired. He claimed damages for doctor's bills, past and future expenses, and other actual damages, aggregating $40,000. On October 8, 1912, after service of citation, appellant answered by general demurrer and general and special denials.

On March 3, 1913, the death of T. B. Walker was suggested in court, and on the 21st day of the same month a first amended original petition was filed in the same suit by his widow, Mrs. Edna E. Walker. This amended petition alleged substantially the same facts embraced in the original petition regarding the cause and character of the injuries, and further alleged that the injuries caused the death of Walker. It was also alleged that the plaintiff was the widow of the deceased, and that at his death he left surviving him four children: Camille, a girl 24 years of age; Fount, a boy 22 years of age; Pansy, a girl 20 years of age; and Elizabeth Ellen, a girl 3 years of age. The plaintiff sought actual damages in the sum of $40,000 for the benefit of herself and the children.

On April 22, 1913, the death of Mrs. Edna Walker was suggested, and what is termed a "second amended original petition" was filed by Camille and Fount Walker for themselves and as next friends for their minor sisters. In this petition substantially the same facts as to the nature and character and result of the injuries sustained by Walker and the conditions under which they occurred were repeated. Damages in the sum of $40,000 were prayed for. On May 16, 1913, the same parties filed a third amended original petition, in which the averments of the second amended original petition were repeated, and in which it was further alleged that,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

in the event it should be determined that Walker died from any other cause than the injuries described, then plaintiffs have judgment for the amount which would have been recovered by him had he lived, which they say amounts in the aggregate to $30,000. As a basis for this latter recovery, they set out in detail the expenses incurred by Walker during his lifetime in treating his injuries, and the time lost, and the mental and physical pain suffered by him.

On June 16, 1913, the appellant filed its first amended original answer, the first portion of which is as follows:

"In the Special District Court of Grayson County, Texas.

"T. B. Walker v. H. & T. C. R. R. Co. No. 21127.

"Now comes the defendant, Houston & Texas Central Railroad Company, and with leave of court files this its first amended original answer in lieu of its original answer filed herein on October 8, 1912, and for such amendment says: As hereinafter stated: Defendant appears and files this answer only as to the original suit instituted by T. B. Walker and now prosecuted by plaintiffs as the heirs and legal representatives of said T. B. Walker, and defendant expressly fails and refuses and has at all times heretofore failed and refused to answer or appear in any manner as to the suits of Edna E. Walker, Camille Walker, Pansy Walker, Fount Walker, and Elizabeth Walker, or any of them, because no citation or process of any kind has ever issued upon such suits or any of them, or been served upon defendant. For answer to the suit of said plaintiffs, as heirs and legal representatives of said T. B. Walker, prosecuted by them, as originally instituted by said T. B. Walker, the defendant pleads as follows:

"(1) Defendant demurs generally to plaintiffs' petition because the facts therein alleged show no cause of action.

"(2) Defendant specially excepts to plaintiffs' petition because of the misjoinder of causes of action therein, and for such exception says that the plaintiffs have improperly joined in this suit the cause of action which they claim to have by reason of the death of the said T. B. Walker. Defendant says that such joinder is improper and asks that the plaintiffs be compelled to sever the two causes of action as pleaded by them and to elect as to which they shall prosecute."

Then follow general and special denials.

The transcript also shows that on June 16th the following order was made in this case:

"This day this cause was called for trial and both parties announced ready, defendant refusing to plead as to the third amended original petition in so far as the recovery by the children for the death of the father is claimed."

After a trial before a jury the following verdict was rendered:

"We, the jury, find for the plaintiffs as heirs of said T. B. Walker for the benefit of the estate of said T. B. Walker the sum of $2,500.

"We, the jury, find for plaintiffs as surviving children of said T. B. Walker, deceased, in the sum of $9,000, apportioned as follows: Camille Walker, $1,000; Fount Walker, $1,000; Pansy Walker, $2,000; Elizabeth Walker, $5,000."

From the judgment entered on that verdict, this appeal is prosecuted.

[1] In submitting the issues the court gave the following instructions, upon which the jury must have relied in formulating the verdict:

"(7) In order for you to determine the rights of the parties in this case, you must first determine whether or not the death of the said T. B. Walker was caused solely by the injuries, if any, he received on or about the 20th day of October, 1910. If you should believe and find from the evidence that the said T. B. Walker died from any cause other than the injuries, if any, which he received on or about the 20th day of October, 1910, then you are instructed that the plaintiffs cannot recover as the surviving children of the said T. B. Walker.

"(8) If you should believe from the evidence that the said T. B. Walker died from any cause other than the injuries, if any, he received by said letter or distributing box falling on him or on or about the 20th day of October, 1910, yet you believe he was injured on or about the 20th day of October, 1910, by said letter or distributing box falling on him, and that said letter or distributing box was caused to fall upon him by the negligence of the defendant, as that term has been hereinbefore explained to you, and that said negligence was the direct and proximate cause thereof, you will find against plaintiffs as surviving children of deceased."

After the transcript was filed in this appeal, and before the case was submitted, the appellees remitted all that part of the judgment awarding the plaintiffs below the sum of $2,500 as the heirs of T. B. Walker, and they now ask an affirmance of that part only which gives them $9,000 as the surviving children. It will therefore be unnecessary to consider those assignments in the appellant's brief which relate exclusively to that portion of the judgment which has been remitted.

The first, and what seems to be the principal, ground upon which the appellant relies for a reversal of that portion of the judgment is thus stated:

"If the accident was the sole and proximate cause of Walker's death, the only action maintainable was the statutory one given to his children (and his wife, had she lived) directly and in their own right. If the accident was not the sole, proximate cause of the death of Walker, the only action maintainable was the one by the personal representative for the benefit of his estate, or by his children as his heirs, provided no administration was had and none was necessary. In this case no recovery could be had by the children in their own statutory right, because the filing of the petition by them setting up such cause of action constituted the filing of a new cause of action upon which citation was necessary; and no citation having been issued thereon, and the defendant not having appeared, no judgment could be rendered thereon."

From this it appears that the right of the appellees to the judgment awarded to them as the surviving children of T. B. Walker is resisted upon the ground that the appellant had never been cited to defend any such cause of action, and had not voluntarily appeared and answered such a suit. It is true the suit originally filed by Walker during his life is the only one which appellant was cited to defend. It is also true that the cause of action prosecuted by his children, in which they seek to recover damages because of his death, is separate and distinct from that originally in-

stituted by Walker himself. The record shows that the same style and number borne by the original suit instituted by Walker has been preserved all through these various proceedings, and the case has been treated as but a continuation of the original litigation. The record shows also that but one citation was ever issued and served, and that was the citation issued upon the original petition filed by Walker. It is further shown that no answer was ever filed except that filed prior to Walker's death, and the first amended original answer from which we have quoted. The question is: Did the court at the time have jurisdiction over the person of the appellant to render a judgment upon that count in the petition in which the appellees claimed damages as the surviving children of T. B. Walker? Article 1882 of the Revised Civil Statutes provides that the filing of an answer shall constitute an appearance of the defendant, so as to dispense with the necessity for the issuance or service of citation upon him. If it can be said that the appellant by either of its answers had submitted itself to the jurisdiction of the court, it is wholly immaterial whether or not any citation had ever been issued and served upon it. When Walker died, his suit did not necessarily abate. If the injuries for which he sought a recovery did not result in his death, his heirs, in the absence of any administration or necessity therefor, had a right to make themselves parties to the original suit and continue its prosecution. Rev. Civ. St. art. 5686. If the facts were such that the plaintiffs were doubtful as to what the proof would establish regarding the true cause of Walker's death, they had a right, under our system of pleading, to so frame their petition that a recovery might be had whether that injury caused his death or he died from some other cause. The addition of such a count might be made by way of amendment in accordance with the rules of practice. Town, Pl. 325–327.

[2, 3] By answering the original petition, the appellant submitted itself to the jurisdiction of the court and was bound to take notice of all amendments filed thereafter in term time under appropriate orders. Rabb v. Rodgers, 67 Tex. 335, 3 S. W. 303; Tyson v. Bank, 154 S. W. 1055; James v. Houston, 21 Tex. Civ. App. 214, 51 S. W. 642.

[4] We think, however, that the last amended answer of the appellant, filed after the third original petition, was alone sufficient to constitute an appearance in the case for all purposes. Under our system of pleading, there can be no such special appearance as that which the appellant attempted in this instance. Conceding that the preamble to the last answer might restrict to one cause of action the general demurrer and the denials which followed, that restriction does not apply to the plea in abatement. In the second paragraph, which contains this plea, the defendant objects to the plaintiffs' entire petition because of the misjoinder of the causes of action therein set up. This necessarily referred to the only two causes of action which the petition contained, that in which the appellees attempted to recover as the surviving children of T. B. Walker, and the one in which they sought a recovery as his heirs in case the injury complained of did not result in his death. Under the rules of pleading, the answer may consist of pleas to the jurisdiction, in abatement, or privilege, or any other dilatory plea. Rule 7 for district and county courts (142 S. W. xvii). In addition to its pleadings, the appellant appeared by attorney in the trial of the case, examined witnesses upon all the issues involved, and presumably argued the facts before the jury. After having done these things, there can be no room for doubt that the appellant submitted itself to the jurisdiction of the court for the rendition of any judgment which the pleadings and the evidence justified. We should not feel inclined to discuss this question at such length but for the fact that it is urgently presented by counsel of recognized ability, and a large portion of the briefs is devoted to its discussion.

[5] It is also urged that the verdict which awards Camille and Fount Walker $1,000 each is excessive. It is contended that, under the evidence, they had no right to expect such benefits from their father had he lived. The evidence shows that both of these two children had attained their majority and were earning money for themselves. The jury had a right to assume that in the ordinary course of events the child would outlive the parent, and that through natural affection, and under the laws of descent and distribution, the child would probably receive some material benefits from the continued life of the parent. The statute leaves the estimate of such benefits to the sound judgment and discretion of the jury; and, unless there is some good reason for holding that the jury has abused that discretion, we do not feel inclined to disturb its findings.

[6-9] Complaint is made of the following portions of the court's charge:

"Now, if you believe from the evidence that the defendant was guilty of negligence, as that term has hereinbefore been defined to you, in furnishing deceased with a defective car in which to be transported, or in its failure to inspect said car and discover said defects and repair said car, or by negligently repairing the same after the same had been reported defective and not making substantial repairs thereto, and that said negligence, if any you find, was the direct and proximate cause of a letter or distributing box falling on and injuring deceased, you will find for the plaintiffs, and assess their damages as herein directed, unless you find for the defendant under other instructions given you. On the other hand, if you do not believe from the evidence that the defendant was guilty of negligence in furnishing deceased with a defective car in which to be transported, or in its failure to inspect said car and discover said defects and repair said car, or by negligently repairing same after same had been reported de-

fective and not making substantial repairs thereto, or if you believe that the defendant was negligent in any of said respects, but that said negligence, if any, was not the direct and proximate cause of the injuries to T. B. Walker, you will find for the defendant."

It is claimed that these portions of the charge are upon the weight of the evidence in assuming: (1) That the appellant furnished a defective car; and (2) that it had failed to inspect the car. The peculiar manner in which the charge is worded justifies the criticism; but the question arises: Is this sufficient to require the reversal of this judgment? In other words, did this charge, as framed, probably cause the rendition of an improper verdict? In order to answer that question, it will be necessary to examine the evidence. It was shown without contradiction that Walker was, at the time of his injury, a railway mail clerk on appellant's line between Houston and Denison. His train was scheduled to leave Houston at or about 9:30 p. m., the day before his injury, which occurred on or about October 20, 1910, and was due in Denison the next morning near the same hour. In the car occupied by Walker on that occasion were two other mail clerks, I. N. Simmons and W. B. Jewell. These clerks were the only eyewitnesses to the injury. Both of them testified on the trial by deposition.

Simmons testified that the accident occurred between Denison and Sherman, just as the train was rounding a sharp curve. Walker was at the time sitting near the letter case, which was a box about four or five feet square and weighed about 40 pounds. As the train rounded the curve, the box was thrown from the table upon which it was sitting and struck Walker on the head, causing a stream of blood to flow from the wounds inflicted. Before leaving Houston on that trip, Simmons heard a car repairer state within the hearing of Walker that he had fixed the box so that it would not come out. He does not know whether Walker heard it or not. Repairs had been made by driving a wedge in the top of the box, probably between it and the frame in which it was held. Witness was unable to state the name of this car repairer, but says he knows that he was one of the repairers in the service of the appellant. At the time the box fell, the train was running about 50 miles an hour, and the box was thrown out with great violence.

Jewell testified to substantially the same facts. He was more positive, however, about Walker's having heard what the car repairer stated with reference to having made the repairs before they left Houston. Jewell further testified as follows:

"The case fell out when the train struck the curve and caused the car to lurch sideways, and this threw the case violently out of its holdings. The hook on the top of the case was loose and worn out and did not hold the case securely in the frame. The car repairer at Houston, Tex., came around to the car before we left Houston, and reported that the case was fixed, that he had repaired the same that day."

The evidence also showed that the defective condition of this letter case had been reported, but it does not designate the party to whom that report was made.

These witnesses were uncontradicted, unless it can be said that the testimony of the car inspector at Houston and of a car repairer is in conflict with their testimony. The inspector testified that he was on duty at the time the car in question left Houston. His testimony indicates that the train in which this car was incorporated was designated as "No. 5." He says that he went through the car, as was his duty, and inspected the interior. He found nothing wrong with this car upon that occasion, except the absence of a dusting brush and probably some other articles. On cross-examination it developed that he had not in fact inspected the case and its fastenings, and the only guide he had of the conditions observed by him on that occasion was the record made by him at the time. He further testified that he was the only one who inspected the car upon the occasion. The testimony of the car repairer is equally as indefinite.

Let us suppose that the court had propounded to the jury this question: "Was the car furnished upon that occasion to Walker defective; that is, was the letter case which it contained insecurely fastened in its place?" There could be little doubt as to what the answer of the jury would have been to such a question. A negative answer would have been so opposed to the great weight of the evidence that the court might have been called upon, in the interest of justice, to set the finding aside. We therefore conclude that there was no reversible error committed by the court in assuming in his charge that the car was defective.

The fact that the case fell from its position against the wall of the car demonstrates that it was insecurely fastened, and that was the defect in issue. We must conclude that it was either so insecurely fastened that it could not withstand the jars of ordinary transportation which it was expected to undergo, or that at the time it fell the train was running at an unusual and dangerous rate of speed. While the evidence does show that it was going at the rate of 50 miles per hour and was rounding a curve, there is nothing which justifies the conclusion that this was an unusual rate at that particular point. For aught that appears to the contrary, it may have been according to a fixed schedule and an unbroken custom for that train.

The next question is: Did the court err in assuming that the car had not been inspected? It will be noticed that the language used in the charge with reference to that issue connects inspection conjunctively with the discovery and repair of the car. In other words, it says:

"If you believe from the evidence that the defendant was guilty of negligence in its failure to inspect said car and discover said de-

fects and repair said car, you will find for the plaintiffs."

We think the evidence shows that the particular defect which caused the case to fall, the condition of the hook with which it was fastened, had not been inspected and repaired. The testimony of the inspector himself establishes that fact. It is also clear that that fastening, which was shown to be the proper one, had not been repaired. It was left to the jury to determine whether or not the failure to do those things was negligence.

We do not think the record justifies the conclusion that the charge probably caused the rendition of an improper judgment. The judgment of the district court is therefore affirmed.