A. POZIL AND H. JAFFE V. THE STATE.

No. 8876.   Delivered April 22, 1925.

Rehearing granted May 5, 1926.

1.—Arson—Requested Charges—Covered by Main Charge—Properly Refused.

Where, on a trial for arson, the court's main charge properly and correctly submitted to the jury the law, on circumstantial evidence, and alibi, and the special charges requested by appellants on these issues were properly refused.

2.—Same—Evidence—Held Sufficient.

While the evidence against the appellants in the instant case, a trial for arson, is wholly circumstantial, their defense of an alibi being supported only by their wives, it was the province of the jury to decide this conflicting evidence, and having decided it in favor of the state, we do not feel warranted in saying that the evidence of the state was not sufficient to support their findings.

3.—Same—Voir Dire Examinations of Jury—Explanations of Court—Not Error.

Where, on the voir dire examination of the jury, appellants were seeking to elicit from the jury if they entertained any prejudice against persons who were indicted for arson. There was no error in the action of the trial court in explaining to the jury that ordinarily the defendants' testimony was not put before the grand jury investigating any matter which might lead up to an indictment.

4.—Same—Evidence—Of Grand Jurors—Held Admissible.

Where, on a trial for arson, there was no error in permitting members of the grand jury to testify that some of the clothing taken from the burned building on Sunday night, after the fire, and brought before the grand jury on the following Tuesday, was still damp and smelled of oil and gasoline. The authorities are numerous, holding that where matters occuring before the grand jury become material in the administration of justice, they may be put before juries by proper testimony.

ON REHEARING.

5.—Same—Evidence—Held Insufficient.

On rehearing appellants earnestly urge that we were in error in our original opinion in holding the evidence sufficient to warrant the conviction. A careful re-examination and analysis of the evidence convinces us that appellants' contention should be sustained. We are always loath to disturb the verdict of a jury, but in the present case we do not feel, on more careful consideration that the state's evidence measures up to the certainty required in a case dependent wholly upon circumstantial evidence, and appellants' motion for rehearing is granted, and the judgment is reversed and the cause remanded.        ----

Appeal from the District Court of El Paso County.   Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction of arson, penalty two years in the penitentiary assessed again each appellant.

The opinion states the case.

*C. W. Croom, A. H. Goldstein* and *Charles Owen* of El Paso, for appellants.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellants were convicted in the District Court of El Paso County of arson, and the punishment of each fixed at two years in the penitentiary.

The charge of the court on circumstantial evidence was full and fair, as was also the charge on alibi, and rendered unnecessary the giving of special charges 2, 3, 4, 5 and 6, asked by appellants. The test of exclusion was plainly stated in the charge on circumstantial evidence as follows:

"The circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion that the property was wilfully set fire to and burned by the defendants. It is not sufficient that the circumstances render probable a wilful burning and that the defendants committed it, but they must exclude every other reasonable hypothesis than that the property was wilfully set fire to and burned by the defendants themselves."

On the subject of alibi the charge contained the following:

"The defendants contend that if there was a wilful burning then they were, at the time the property was set fire to and burned, at another and different place from that where the property was set fire to and the burning occurred and therefore were not and could not have been the persons who set fire to and burned the property. And if the evidence raises in your mind a reasonable doubt as to the presence of the defendants, or either of them, at the place where the burning occurred at the time the fire was set to the property, if there was any wilful burning, you will acquit the defendant or defendants as to whom you have such reasonable doubt."

Very serious complaint is made here of the insufficiency of the testimony. It seems not controverted that the fire was of incendiary origin. Same occurred about 1:30 a. m. on Sunday night, and the alarm brought the fire department to the scene in a few minutes. All the doors of the building were found

locked but the firemen broke in the door to a back room where the fire seemed to be principally located and extinguished it in a few minutes. Not a great deal of the stock in the store was damaged. The fire chief of El Paso, who had more than thirty years' experience as a fireman, testified that within his knowledge oil, gasoline, etc., made a bluish or bluish white flame different in color from a flame made by burning wood, and that in the corner of the room where the fire was, he observed flames of that character. They would not yield to ordinary application of water. A search of the main store building revealed a number of garments saturated with oil or gasoline and so placed as to be under and near other inflammable articles. No pretense is made but that these articles were not thus placed for the purpose of increasing the rapid progress of the flames if same had been communicated to this part of the store.

Appellants reached the scene shortly after the fire department and claimed that the store had evidently been robbed, and called attention to some empty boxes as sustaining their proposition. It was in testimony that shirts and articles such as had apparently been in said empty boxes, were later discovered in grips piled up on a show-case. The theory advanced by the appellants at the time was that the store had been robbed and a fire started by the robbers, apparently for the purpose of concealing their work. It was in testimony that a night-watchman who had been in the employ of appellants, was discharged by them on the 4th of March preceding the fire on the 10th. It was also in testimony that within six weeks preceding said fire appellants had increased their insurance quite heavily, it being shown that on the 24th of January they took out $5,000.00 worth of insurance on stock and fixtures, and on the 29th $5,000.00 more, and then a little later $3,000.00 more, and that in February they took out $10,000.00 use and occupancy insurance. It was also testified by a representative of one of the insurance companies that appellants represented to him or his company that they had about $38,000.00 worth of stock when they increased this insurance. The witness testified that an inventory made after the fire, including an estimated value of one thousand dollars for stock injured in the fire, disclosed a valuation of about $20,000.00.

For the defense it was shown by several witnesses that on the night of the fire both appellants attended a card party, and that about 10 o'clock they left said party to go out to some point where the daughter of one of the appellants was in a car

which she was unable to start. The witnesses at the card party said the appellants returned in about an hour and remained at the card party until it broke up near midnight. The wives of appellants located them at home from then until the alarm of fire came. The son and daughter of appellant Pozil testified to being in their car on said night at about 10 o'clock and that they could not start it and telephoned and that appellants came presently to the place where they were and worked over the car for quite a while. These are substantially the facts. We are not able to say that the jury's conclusion therefrom evidences passion or prejudice, or that same is so wholly without evidence to support it as to call on this court to revise their conclusion and to reverse the case. The jury are not compelled to accept as true the statements of the witnesses either for the State or the defendant, and especially when said witnesses are interested to an extent that might ordinarily affect their testimony. Both appellants left the card party about midnight. They lived in the town where the fire occurred. Their whereabouts from that time on were accounted for by themselves and their wives. As above stated, the fire was clearly set by some one. The city inspector testified that he had examined the wiring, etc., of said building shortly before the fire and that it was all right. The gasoline saturated garments scattered at places in the building would seem to indicate a purpose of more deliberate and complete destruction than would likely follow any hasty attempt by robbers to conceal their steps. The interest of appellants in the subject matter of the fire, the recent heavy increases of insurance on their part, the discharge recently before the fire of the only man who slept in the building, the unsupported and apparently unreasonable explanation offered by appellants at the time—all these matters together with any other legitimate deductions from the testimony, were for the jury, and we are loath to disturb a verdict finding as much support in the testimony apparently as this one does.

We have examined each of the bills of exception. We believe that the witness who made the inventory of the stock of goods after the fire was properly permitted to testify to the amount of values found, and that the chief of the fire department showed himself to have sufficient familiarity with fires caused by burning oil, etc., to testify that the fire he observed burning in the corner of the back room was an oil or gasoline fire.

We have carefully examined the bill of exceptions complain-

ing of the fact that the court explained to the jury the ordinary method by which an indictment was returned, and are of opinion that nothing in it was capable of any injury to the rights of appellants. Appellants were seeking to inquire of the jury if they had entertained a prejudice against parties indicted for the offense of arson, and in connection with the questions along this line the court explained to the jury that ordinarily the defendant's testimony was not put before the grand jury investigating any matter which might lead up to an indictment.

The fact that a grand juror was permitted to testify that some of the clothing taken from the burned building on Sunday night was brought before the grand jury on the following Tuesday and that it was still damp and smelled of oil or gasoline, would not seem to be objectionable as violative of the rules of secrecy imposed by the statute upon grand jury investigations. The authorities are numerous, holding that if such matters become material in the administration of justice, they may be put before juries by proper testimony.

Special charge No. 1 asked by appellants appear to us to not embrace a proper statement of the province of a jury and to be an innovation on the well understood charge on the law of circumstantial evidence.

Finding no error in the record, and being unable to agree with any of appellants' contentions, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is urged with much earnestness that the evidence is insufficient to sustain the conviction; that the criminative facts relied on by the State lose much of their force when analyzed in connection with the other evidence and are not sufficiently cogent to exclude every reasonable hypothesis except that of appellants' guilt which is required in a case dependent wholly upon circumstantial evidence.

The store occupied by appellants had a partition in it cutting off a room in the rear which will be referred to as the "back room." The fire originated here and the damage done was confined mostly to things stored in this back room and to merchandise on shelves against the partition wall on the inside of the main store. The merchandise stored in the back room was referred to by appellants as the "reserve stock." The evidence seems to establish beyond question that the fire was of incendiary origin. Coal oil or a low grade of gasoline appeared

to have been used in one corner of the back room and also to have been thrown upon boxes and upon the goods on shelves therein. Garments of various kinds saturated with this same substance were found scattered in a number of places in the main store. The fire was never communicated to them. No inflammable train seems to have been laid between these oil soaked garments, nor between them and where the fire originated, at least no evidence appears indicating this. The fire was discovered about one-thirty at night. The proof shows it could not have been burning more than thirty minutes when discovered and the alarm given which was answered promptly by the fire department. There is no evidence indicating that the fire was set by a "slow process." The State was not able to show that either of appellants were at or near the store later than ten o'clock prior to the fire. They, with their wives were attending a party. Mr. Posil was called by his daughter about ten o'clock to come and assist in starting an automobile with which she was having trouble. Appellants left the party together in Jaffe's car. They testified that they drove by the store and noticed the lights in the show window were on. One of them turned the lights off from a switch on the outside of the building by the use of a key. The State apparently did not know that appellants went by the store upon this occasion until the fact was disclosed by them.

It seems to have been the contention of the State that appellants set fire to the building for the purpose of securing the insurance which had recently been largely increased. This increase of insurance is one criminative fact relied on. Analyzing the evidence upon this point it shows the fire occurred on the 10th of March. On the first of January preceding appellants' books showed they had some $38,000 worth of merchandise on hand, at which time they had only $3,500 insurance on merchandise and $3,000 on fixtures. Between the first of January and the time of the fire they took out additional insurance of $11,000 on merchandise and $2,000 on fixtures, a total new insurance of $13,000. There seems to have been no contention during the trial that appellants were over-insured upon fixtures. At the time of the fire the total insurance on merchandise was $14,500. The lowest estimate of the value of the merchandise at the time of the fire was shown by the testimony of one of the insurance adjusters which is epitomized in this statement by him:

"The total, as shown by the memorandum and other inform-

ation I obtained there of the stock on the day before the fire in my opinion is about $20,000."

In this estimate the value of the goods in the back room was not included. Taking the books of appellants as to the value of the goods on hand January 1st, together with the sales and purchases since that date, they show that they had on hand at the time of the fire some $33,000 worth. If the estimate of the insurance adjuster that $20,000 was the value of the goods in the main store be taken, (disregarding the value of the merchandise in the back room) the $14,500 insurance on merchandise would still leave appellants unprotected in the amount of $5,500. If the book value of $33,000 be taken they were unprotected in the amount of $18,500. All of the evidence shows that on the first of January appellants were greatly under-insured on merchandise and while the increase of insurance between then and the time of the fire may be regarded by the State as a suspicious circumstance it is not inconsistent with the theory that they would have used poor business judgment not to have increased the insurance. We have searched the record to ascertain if possible whether appellants were dissatisfied with the business they were doing between January 1st and March 10th. We have found no expressions attributed to either of them indicating this. The only evidence throwing light upon it is that since the first of January their purchases amounted to $1,272.39 and their sales during that time amounted to $5,617.92. There is nothing in the record showing the "overhead" expense incident to conducting the business. No legitimate conclusion can be drawn from the evidence that appellants were seeking to liquidate their business by employing the method of burning it out and collecting the insurance.

Some importance seems to have been attached to the fact that some six days before the fire the services of the night watchman who had been employed by appellants for some time prior thereto had been dispensed with. In our original opinion we referred to the severing of the relations between the night watchman and appellants as "The discharge recently before the fire of the only man who slept in the building. * * *." It is pointed out in appellants' motion for rehearing that the transaction in which the night watchman's services were dispensed with can not properly be regarded as a discharge of him by appellants. It appears from the statement of facts that Posil had found the night watchman (Trost) asleep on one or two

occasions.  The testimony of Trost himself as to what occurred at the time his services as night watchman were dispensed with is as follows:

"I had been employed by them (appellants) as watchman down at what is known as the Golden Rule Store.  *I quit there March 4th.  I quit the fourth and the fire started on Monday morning, the 10th.  I quit a week before the morning of the fire.* * * * He (Posil) said that 'we will have to get the janitor for the job if you are not on the job.'  I spoke up and says, 'I quit.  I can't work all day and all night, that is too much of a strain on a person.'  He said, 'All right, quit'."

We do not think from the foregoing that the inference can be drawn that appellants had discharged the night watchman in order to give them an opportunity to carry out an intention to burn the store.  Trost seems to have quit his job because he was criticized by one of the appellants for his lack of diligence as a watchman.  There appears to be no foundation for just criticism of appellants for letting Trost go as a watchman, nor for regarding this as a criminative fact against them.

At the time our original opinion was written we were under the impression that appellants claimed the night of the fire that the store had been burglarized and set on fire to prevent the discovery of the act.  We were in error in this regard.  The evidence shows that when asked by the fire chief (Mr. Ray) the night of the fire as to their opinion of its origin appellants stated they did not know.  The next day some suggestion was made by one of them that probably the store had been burglarized and attention was called to some grips on top of a show window.  On examination these grips were found to be packed with shirts and other articles of wearing apparel.  Upon closer analysis of this testimony we fail to see the cogency of it as a criminative fact against appellants.  The evidence shows that burglary was not uncommon and that efforts had been made to enter the store while Trost was on duty as watchman there.

If it be conceded that the facts raise a strong suspicion that appellants may be guilty, yet this does not meet the requirements of the law, for, where circumstantial evidence is relied on wholly the circumstances must exclude every other reasonable hypothesis except that of appellant's guilt, and must go further than raising a probability or suspicion.  Pogue v. State, 12 Texas Ct. App., 283; Hogan v. State, 13 Texas Ct. App., 319; Kunde v. State, 22 Texas Crim. App., 99, 3 S. W., 325; Gay v. State, 42

Texas Crim. Rep., 450, 60 S. W. 771; Hernandez v. State, 72 S. W., 840; Brown v. State, 150 S. W., 436.

In determining the sufficiency of the evidence we have considered only that which could be criminative in its nature. If we consider that introduced by appellants it raises a strong case of alibi. The testimony shows that both appellants with their wives attended a party at a neighbor's on the night of the fire; that about ten o'clock the daughter of Posil called him over the phone at the neighbor's requesting him to come and assist in getting her automobile started. Posil went with Jaffe in the latter's car to the point where Posil's daughter was. It was on this trip they passed the store and according to their evidence turned the light out in the show window. After some delay they got the Posil car started but for fear Miss Posil might have further difficulty with it they followed her in the Jaffe car to the Posil home. Here they went in the house and washed their hands and then returned to the party, having been gone from three quarters of an hour to an hour. They finally left the party some time after twelve o'clock. Up to this point their whereabouts seems to be accounted for by disinterested parties. They reached their homes about 12:20. The fire was discovered at 1:30. The whereabouts of each of appellants during this hour and ten minutes is accounted for only by their own testimony and that of their wives which places them at home where they were notified by telephone that the store was on fire. According to the testimony of the fire chief and others it was their opinion the fire had been burning about thirty minutes when discovered. This would have given appellants only thirty or forty minutes to come to the store, set the fire and return to their homes. Of course the jury was not compelled to accept the testimony of appellants or their wives, but all the evidence taken together leaves the more reasonable conclusion to be that if appellants were in any way connected with the fire or had knowledge thereof that the fire was actually started by someone else rather than by either of them.

We are always loath to disturb the verdict of a jury but we have been convinced upon a re-examination of the record that the evidence in the present case does not measure up to the certainty required in cases dependent wholly upon circumstantial evidence. We believe our duty demands the setting aside of the former order affirming the judgment and that the cause be now reversed and remanded for a new trial, and it is so ordered.

*Reversed and remanded.*