**HUNTRESS, County Clerk, v. STATE ex rel. TODD et al.**

No. 9855.

Court of Civil Appeals of Texas. San Antonio.

Nov. 20, 1935.

Rehearing Denied Dec. 4, 1935.

Forrest Bennett, Leroy G. Denman, D. A. McAskill, Tom J. Newton, and Van Henry Archer, all of San Antonio, for appellant.

John R. Shook, Paul J. Kilday, L. J. Gittinger, and Leroy Jeffers, all of San Antonio, for appellees.

BOBBITT, Justice.

The respondent herein, George W. Huntress, Jr., prosecutes this appeal from an order and decree of the Seventy-Third district court of Bexar county, entered on the 1st day of May, 1935, adjudging him guilty of official misconduct and incompetency in public office, removing him from the office of county clerk of Bexar county, and declaring the office vacant. Such order and decree also continued in effect, pending the appeal of the case, an order of the trial court as entered in this cause on the 11th day of May, 1935, temporarily suspending the respondent from office and appointing B. F. Ladon, to discharge the duties of the office of county clerk of said county, for the time being and pending the final disposition of the case.

The proceedings herein against respondent were instituted by the state of Texas, acting through her criminal district attorney of Bexar county, John R. Shook, upon the relation of Dr. James M. Todd and five other citizens of Bexar county, under and pursuant to the provisions of title 100 of the Revised Civil Statutes of Texas (article 5961 et seq.), relating to the removal of officers from public office.

. The parties, for convenience, will be designated as plaintiff and defendant, as in the trial court.

On February 4, 1935, the plaintiff, upon the relation of six citizens of Bexar county, Tex., filed with the court an application for permission to file a petition for the removal of defendant from the office of county clerk. On the same day the judge of said court granted permission to file such petition. Thereupon the original petition, duly signed and sworn to by the relators, was filed and docketed. On the

same day application was made by plaintiff for an order directing the issuance of citation to the defendant; such application was granted, and the hearing of said petition was set for February 11, 1935. Citation was duly issued and served upon defendant. On such 11th day of February, the defendant having appeared and filed his answer, the court entered an order suspending the defendant from the office of county clerk, pending a trial of the case, and appointed B. F. Ladon as the person, for the time being, to discharge the duties of the office.

On the 22d day of April, 1935, having secured leave of the court so to do, plaintiff filed its "First Amended Original Petition"; defendant having appeared and answered in the case. On such date the defendant objected to proceeding to trial upon said amended petition on the ground, or contention, that he was not in court; that the court had no jurisdiction over him as to the new matters in said petition. The defendant then expressly informed the court, however, that he was not taken by surprise; that he was not asking for a continuance; that he was ready to and he did then file an answer to such amended petition. Thereupon the court informed counsel for the defendant that if the defendant was not ready on any of the matters set up in the amended petition, the court would entertain a motion for a continuance. The defendant then refused to present such motion and the case proceeded to trial.

The amended petition of plaintiff contained twenty-seven alleged "causes" for the removal of the defendant; each thereof being separately presented in the petition, and each being captioned: "Cause No. ——." The said causes alleged official misconduct, incompetency, and gross carelessness on the part of the defendant, and all were alleged to have occurred subsequent to November 6, 1934, the date upon which defendant was last "elected" to his office. Some of such causes alleged transactions or conduct which continued from November 6, through and after January 1, 1935, and others alleged transactions and conduct after January 1st. The defendant presented numerous demurrers and exceptions to said amended petition. The effect of the action of the court upon these demurrers was to hold that the defendant could be removed from office only for acts committed by him subsequent to January

1, 1935, the date upon which he "qualified" for his office subsequent to his last election thereto. The rulings of the court also had the effect of holding that certain alleged causes contained in said amended petition did not constitute grounds for removal from office. After such rulings by the court, there remained in the petition eighteen of the original twenty-seven alleged causes. The plaintiff proceeded to trial upon said amended petition by striking therefrom those causes eliminated by the ruling of the court, and after interlining certain other causes and striking therefrom the portions eliminated by such rulings. The petition contained the eighteen alleged causes remaining after such rulings, numbered as they had been when the amended petition was originally filed.

We will hereinafter state the substance of each of the alleged causes for removal in connection with the issues submitted to and found by the jury.

In addition to the demurrers and exceptions above mentioned, the answer of the defendant, upon which the case was tried, consisted only of a general denial, and a special answer, which special answer alleged:

First. That the office of county clerk of Bexar county requires a great amount of detail work and employs over fifty people; that no one person can keep familiar with the details of the office, and keep within his mind an understanding or knowledge of the duties performed by such a large number of people; that such employees perform acts separate and apart from each other; and that no person can be familiar with the records of that office in detail.

Second. That the state of Texas and the counties therein containing more than 190,000 population, and which includes Bexar county, have realized the enormous work incident to the duties and responsibilities of the county clerk's office, and have caused to be passed laws relieving the county clerk of controlling as to the work of receiving, recording, and accounting for finances of the office and the control over the finances of the office, as shown by articles 1674, 1675, and article 1656a (Acts 1933, c. 98, § 1), under title 34, subd. 2, and other articles of the Revised Civil Statutes.

It was shown upon the trial that under the provisions of article 1656a (as the same existed prior to its amendment effective May 1, 1935 [Vernon's Ann.Civ.St. art.

1656a]), giving the county auditor power (in his discretion) to adopt and enforce such regulations, not inconsistent with the Constitution and law, as he might deem essential to the speedy and proper collection and checking of, and accounting for, the revenues and fees belonging to the county, such auditor had in fact required that all funds collected be deposited in the county depository bank in the name of the county clerk in his official capacity; but that the county auditor had never in fact exercised the discretionary power given him by such article 1656a, and had not required that all of the fees and moneys therein referred to should be turned over to the county treasurer by the officer as collected and thereafter drawn out by checks upon the county treasurer, etc.

The case was tried before a jury; and, in accordance with the provisions of article 5978 of the Revised Civil Statutes, by appropriate instructions and proper charge applicable to the facts of the case, the jury was instructed to find from the evidence whether the causes of removal set forth in the petition were true in point of fact or not; and, there being more than one distinct cause of removal alleged, the jury was instructed to say, by their verdict, which cause or causes they found were sustained by the evidence before them and which were not sustained. The eighteen alleged causes for removal, which were submitted to the jury, were numbered as in the amended petition and were, in substance, as follows:

No. 1. That during January, 1935, until January 17th, the defendant did fail and neglect to perform any duty in connection with his office and failed to supervise any of the records, books, reports, or accounts of the office, and failed to discharge any duty in connection with the funds of the office. That by reason of his gross carelessness in that regard, funds of the office in the sum of $817.28 were misapplied. (This amount appeared in the petition as $1,032.02, but was changed by trial amendment to $817.28.)

No. 4. That during the month of January $817.28 was converted out of the funds of said office, and that such conversion was rendered possible by reason of the incompetency and gross carelessness of the defendant in handling the business and affairs of said office.

No. 5. That the defendant was incompetent and guilty of gross carelessness in the discharge of the duties of his office for the reason that during the period from January 1 to 17, 1935, he did fail to promptly post and enter, or cause the same to be done, in the books of said office, the items which should have been posted and entered therein, but did permit all of such items to remain unposted and unentered over a long period of time.

No. 6. That the defendant was incompetent and guilty of gross carelessness in the discharge of the duties of his office for the reason that during the period from January 1 to 17, 1935, he did fail to promptly deposit in bank, or cause the same to be done, the funds and moneys coming into his office and coming into his custody and control; but did permit such funds and moneys to remain upon hand in said office and to accumulate in said office and to remain in said office in insecure places therein.

No. 7. That the defendant was incompetent and guilty of gross carelessness in the discharge of the duties of his office for the reason that during the period from January 1 to 17, 1935, he permitted various employees of his office to take from the funds of the office various sums of money and to place in such funds slips of paper stating the amount and the name of the employee who had taken such sums; that such slips of paper constituted the only evidence and record of the fact that such sums had been taken from the funds of said office. That such slips were of a nature easily lost or misplaced, and that the same were handled with gross carelessness and were left in drawers and cabinets in said office to which many people had access.

No. 8. That the defendant was incompetent and guilty of gross carelessness in the discharge of the duties of his office for the reason that during the period from January 1 to 17, 1935, he did take from the funds of said office various sums of money for his own use; that in taking the same he did not draw checks to his order, but took such amounts in cash; that in taking the same he frequently failed to make any record of the amount thereof; that on numerous occasions he placed slips of paper in such funds showing the amount so taken; that such slips constituted the only record of such transactions, and the same were kept in various drawers and cabinets and other insecure places in said

office accessible to the defendant and other persons in said office.

No. 9. That the defendant was guilty of official misconduct for the reason that on January 18, 1935, he was fully informed of the fact that a shortage of approximately $13,000 existed in the funds of his office; that at that time there were on hand in said office a large number of slips of paper which constituted the only record in existence of the transactions of the defendant with reference to the withdrawal of various sums of money from the funds of said office; and that he did willfully destroy the same.

No. 16 to 23, inclusive. That in the annual report of the defendant, sworn to and filed with the district clerk on March 11, 1935, the defendant did willfully state that he had paid to a designated employee a stated sum as salary for the year 1934; whereas, in truth and in fact, he had paid such employee less than the sum claimed to have been paid. And that by reason thereof the defendant had unlawfully paid his employee a less sum than specified in his sworn statement and was guilty of official misconduct in so doing.

No. 25. That during the period from January 17, 1935, to February 12, 1935, the defendant was incompetent in office and guilty of gross carelessness in the discharge of the duties of his office, in that, during such period of time certain persons named in said petition filed with the defendant and his authorized deputies applications for license to sell beer; that such parties paid the costs incident to such application; that all of said applications and the file and papers pertaining thereto, as well as the sums deposited thereon, had disappeared from said office. It being further alleged that such disappearance was due to the gross carelessness and incompetency of the defendant in his failure to exercise supervision over said office and his failure to attend to the duties of his office.

No. 26. That during the months of January and February, 1935, until February 12th, the defendant was incompetent and guilty of gross carelessness in the discharge of the duties of his office and guilty of official misconduct, in that Dillard Coy, one of his deputies, did lead certain persons, named in said petition, to believe that he was the proper person to whom beer license fees should be paid, and that by reason of such conduct on the part of the said Dillard Coy, he was permitted to convert such beer license fees to his own use; that the same was rendered possible by reason of such incompetency and gross carelessness of the defendant.

No. 27. That the defendant during the month of January, 1935, did issue hunting and fishing licenses; and that upon the suspension of the defendant from said office it was found that the books containing such license fee receipts and stubs were missing from said office and that the fees received for the licenses issued were missing therefrom. That the disappearance of such books and funds was rendered possible by reason of the incompetency of the defendant and his gross carelessness in the discharge of the duties of his office.

Each of the above allegations, or "causes for removal," against the defendant, was definitely and separately found by the jury to have been sustained and found to be true in fact from evidence adduced upon the trial.

Pursuant to such verdict of the jury, the court entered its decree removing the defendant from office, declaring his office vacant, providing that, the public interest so requiring, the suspension of the defendant from said office should continue pending disposition of the appeal, and that the appointment of B. F. Ladon to discharge the duties of such office for the time being should also remain in effect pending the appeal of the case.

Defendant duly filed numerous exceptions and objections to the charge of the court, and requested the submission to the jury the eleven special charges tendered. The demurrers, exceptions, and objections were overruled, and the court refused all of the requested special charges. Defendant duly filed his motions for a new trial, which were overruled; and the appeal has been duly perfected. Upon motion of defendant, the cause has been advanced on the docket of this court.

This is an unusual and extraordinary case. While it is a special proceeding, our laws expressly provide that the trial and all proceedings connected therewith shall be conducted, as far as is possible, in accordance with the rules and practices of the court in other civil cases.

At the outset defendant challenges the judgment of conviction and removal on various contentions shown by numerous assignments of alleged error on the part

of the trial court. In addition to his complaint to the action of the court in overruling his plea to the jurisdiction, which is given special attention in his supplemental brief, defendant's contentions and assignments are contained in the several propositions set forth in his main brief.

■ We first give attention to the question of the plea in abatement. Defendant earnestly contends that the trial court had no jurisdiction in the case, because the petitions—both original and as amended—for the institution and prosecution of this proceeding were not verified on oath by a person competent and legally qualified to make oath to the facts constituting the grounds for the application; that each of the relators who signed and swore to the original, as well as the amended petition, were disqualified and incompetent so to do by reason of the fact that each thereof were members of the grand jury of the county of Bexar and state of Texas, at the January, 1935, term, which investigated the doings of defendant in connection with the handling of the affairs of his office and, according to defendant's brief, returned an indictment against him charging him with a felony; that by reason of their oaths as such grand jurors, and under the provisions of the statutes governing their conduct as such, the relators were disqualified and incompetent to make the affidavit to the petitions; that such relators violated their oaths as grand jurors and, in fact, defendant contends, violated the penal laws of the state and subjected themselves to prosecution for signing and swearing to the petitions while they were serving as such grand jurors; that the facts and circumstances alleged in such petitions for the removal of defendant were learned by the relators while serving and by reason of their service on and as members of such grand jury, while it was investigating criminal cases against the defendant; that the action of relators in making such affidavit should not only be condemned to the extent of rendering all proceedings herein void, but that relators have made themselves liable for contempt of court and prosecution.

It is true that the affidavit required by article 5977 of the Revised Civil Statutes is an essential part of the application and petition in such proceedings as are here at issue, and without such the court acquires no jurisdiction. The only defect, however, which defendant claims in respect to the affidavit, is that the relators, for the reasons stated, were disqualified to make the same. That is, there is no question raised as to the form, substance, or sufficiency of the affidavit; it is, defendant contends, void solely by reason of the asserted disqualification of relators to make it.

This court is fully cognizant and thoroughly appreciative of the fundamental law and the various statutes of this state which provide for, govern, and regulate the organization and operation of grand juries. Citizens of Texas have no higher or more important public duty to perform than, when called upon to serve as grand jurors, they may be in a position so to do and that they shall in fact, in all proper ways, not only be permitted but encouraged to discharge their supremely important public duties in complete accordance with the true purposes of the laws of the land which create their powers, fix their responsibilities, and call for the discharge of their duties in a scrupulously fair and impartial manner, without fear or favor. The rights of the individual should at all times and under all circumstances be carefully safeguarded and protected. Likewise, the interests of society as a whole, the welfare of the great body of law-abiding citizens, should not be treated lightly; and certainly the true purposes and the fundamental principles of government should not be lost sight of in the administration of the various laws relating to the duties of grand jurors in the important tasks they are called upon to perform.

It seems clear to us that the statutes relating to the secrecy of the work of grand juries, and providing punishment for those who violate such laws, were enacted for very definite purposes, and primarily that of safeguarding the rights of the innocent; expediting the investigation of law violations, and the prompt apprehension of criminals; and especially to encourage citizens to feel free to give information, and otherwise properly assist those charged with the important and difficult duty of enforcing the criminal laws. It does not occur to us that the laws enacted for such important public purposes should be construed to protect wrongdoers; thwart, if not defeat, the investigation and apprehension of criminals and to discourage law-abiding citizens from properly co-operating with law enforcement officers in their efforts to enforce the laws intended to protect the public. In the instant case,

defendant contends that prior to the making of the affidavit by relators of which he complains, relators and the other six members of the grand jury had theretofore investigated criminal charges against defendant, in the grand jury room, and had already returned an indictment against him; that under such circumstances, and under the laws governing the conduct of grand jurors, relators were disqualified to. make the affidavit here in question, which had for its purpose the authorization and institution of the proceedings by the state of Texas in this case, which resulted in the removal from the office of county clerk of Bexar county the defendant herein. Apparently, at the time relators made the affidavit, defendant had already been indicted for alleged wrongdoing in public office; the indictment had been published, and the charges contained therein were therefore officially and definitely filed in the public records of the county. Apparently, there was at such time no secret as to the charges which had been investigated in the grand jury room. At the same time, the defendant, who according to his brief before us had already been indicted on a felony charge, was still in office and in full charge and control of the affairs and finances of an important public office. It seems to us that under such circumstances, and in full keeping with the true purposes and integrity of all laws relating to the operation of the grand juries in our state, the grand jurors then in public office, consisting of the relators and the other six members thereof, were not only justified and authorized so to do, but that in truth and in fact it was their public and official duty, under such peculiarly grave circumstances, to take such lawful action as might be necessary and proper to safeguard the public interest and the integrity of public office, to the extent that one whom they believed, under their oaths, was guilty of violating the laws and whom they had duly presented by indictment, charging him with a felony, should not continue in charge of a most important public office involving the handling of public funds. To hold that, under such plain facts and unfortunate circumstances as thus confronted the said grand jurors, they should be "deaf, dumb, and blind" to the duties and responsibilities of public office and the vital public interests involved to such extent as to preclude them from making the affidavit in question, would not be in consonance with the real purpose and true intent of the fundamental and statutory laws of our state. Under such condition of affairs, and not overlooking any of the fundamental principles set forth in the Constitution and laws of our state safeguarding the rights of the individual as well as the welfare of society and the integrity of public office, it is our opinion that relators should not only not be condemned for their action in making the affidavit which resulted in the removal from public office of one whom they had indicted for a felony, but rather they should be commended for their action in connection therewith. If, as contended by defendant, relators have, under the circumstances alleged, violated—technically or otherwise—any of the penal laws of this state, or have brought themselves into contempt before the courts of the land, we know of no reason why those charged with the enforcement of the laws allegedly so violated should not proceed against them; or that the court in which defendant contends they are in contempt should not proceed in accordance with law. We have no reason to presume, and we do not presume, that the officers charged with the enforcement of the law, and the court in which the asserted contempt was committed, have failed, or that they will fail, to fully discharge their official duties in all respects. Certainly the contentions of defendant, in respect to his plea in abatement, form no sound reason and constitute no proper basis to defeat the purposes and the accomplishments of the state of Texas, in such a proceeding as is set forth in the record before us, to remove one chosen to discharge a public trust from his office, when it has been so overwhelmingly established by competent evidence and the verdict of a jury that such person has been faithless to his trust, and has been guilty of so many charges of official misconduct, gross negligence, and incompetency as to render him unfit, according to the findings of the trial jury, to continue therein, and the jury is presumed to have tried him fairly and impartially under their oaths; and this record shows no complaint in the latter respect. In this conclusion, let it be understood that we do not place "the cart before the horse." Of course, it is true that if relators were in law disqualified to make the affidavit in question, the court acquired no jurisdiction in this proceeding. It seems clear to us, however, that relators

were not disqualified as alleged, but that under the peculiar circumstances of this case, and in keeping with a just, reasonable, and sensible construction of all laws affecting their conduct as members of the grand jury and otherwise, they were justified and should be commended rather than condemned for their action in making the affidavit here complained about. The true purpose of our laws governing grand jurors and others is to apprehend and require punishment for wrongdoers; not to provide easy and technical methods for law violators to escape or secure protection.

The record before us does not in fact show, as contended by defendant, that the information used by relators in the making of the affidavit was learned by them in the grand jury room or as members of the grand jury. Defendant, according to the record, adduced no testimony in support of his plea in abatement, and there is no testimony in the record to support his contentions in this respect.

If, for any reason, however, it might be held that we are in error in the conclusion above stated, in reference to the insufficiency of defendant's plea in abatement, it is entirely clear and conclusive to our minds that for another independent and additional reason relators were not disqualified to make the affidavit in question. As stated, this is a special proceeding provided by the Legislature for the specific and definite purpose of authorizing and expediting the removal of a public officer from a position to which he has been elected, without regard to any criminal action which might or might not be taken against him. Article 5976 of the Revised Civil Statutes definitely and independently sets forth the qualifications of persons in making such an affidavit as is here under attack. Such article specifically states: "The proceedings for the removal of said officers may be commenced, either in term time or vacation, by first filing a petition in the district court of the county where the officer resided, by a citizen of the State who has resided for six months in the said county where he proposes to file such petition, and who is not himself at the time under indictment in said county." It will be observed that a person may cause removal proceedings to be commenced who possesses these sole and exclusive qualifications: (a) He must be a citizen of the state; (b) he must have resided in the county in which the suit is filed for six months; and (c) he himself must not

at the time be under indictment. There is no contention that the relators, or any one of the six, did not possess each of these stated statutory qualifications. Of course, the well-known rule of statutory construction applicable here is that the express mention in a statute of specific qualifications constitutes an implied and definite exclusion of other qualifications; and any attempt by a party or the court to add any additional qualifications or tack on any additional disqualifications, in the face of the statute, would be illegal and wholly without effect. This is an elementary rule of statutory construction which is so well understood and established as to admit of no serious argument. Clearly, then, under the express terms of the applicable statute, and in the face of the undisputed facts with which we are confronted, the relators possessed all the qualifications necessary to make the affidavit for the proceedings herein.

In view of what has been said, we hold that the trial court committed no error in overruling defendant's plea in abatement; and that the proceedings in this case were properly instituted on the relation of persons competent and qualified to make the requisite affidavit.

In support of his contention first discussed above, defendant cites no authorities. As a matter of fact, counsel for the defendant frankly state that the question raised has never been before the courts of Texas, in so far as they have been able to determine. We have not been able to find any authority supporting defendant's contention. Furthermore, we are not apprised of any sound reason, based upon the broad and general principles of law, to lead us to the conclusion reached and asserted by defendant. The contrary seems to be the just rule, and to comport with the true purposes of our laws and in keeping with sound reason. The several statutes relating to the secrecy of grand jury proceedings should be, and have been by our courts, given that reasonable and liberal construction which will result in the accomplishment of the purposes for which they were enacted: The attainment of justice, and the vindication of truth and right. It should not be overlooked, furthermore, in this connection, that it is expressly provided in our Code of Criminal Procedure that: "The provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of crime." Article 23. Certainly we understand that

644

this is not a criminal case; but defendant seeks relief in this proceeding under and by virtue of the provisions and constructions of the criminal laws of the state, and we cite the authorities here mentioned, and discuss the propositions thus raised by the defendant, to squarely meet his every contention.

The record before us shows, through the testimony of defendant himself, that prior to the making of the affidavit under attack, he had theretofore voluntarily gone before the grand jury, waived all claims of immunity, and testified at length concerning the handling of the funds of his office and the alleged shortage therein; that soon thereafter and prior to the making of such affidavit, defendant had been indicted by such grand jury on a felony charge. It is our opinion that under such state of facts, where it is undisputed that the grand jury had already "truly presented," and there had been filed and received, an indictment against defendant charging him with the commission of a felony as result of the handling of the affairs and funds of his office, and presuming that he had made bond, was at liberty awaiting trial on such indictment and charges which had theretofore been made public, and such defendant was still in full charge and control of his office and the management and handling of the public funds thereof, members of such grand jury are not disqualified to make the necessary affidavit authorizing the institution of a removal suit against such indicted defendant under the provisions of title 100 of the Revised Civil Statutes; the effect of such affidavit being to enable the state to proceed with the prosecution of a removal suit against such defendant. A review of the following cases substantiates the holding of liberal construction as herein stated: Wisdom v. State, 42 Tex.Cr.R. 579, 61 S.W. 926, 927; Pozil v. State, 104 Tex.Cr.R. 244, 283 S.W. 846; Addison v. State, 85 Tex. Cr.R. 181, 211 S.W. 225. In support of this contention generally we cite: 21 Tex. Jur. p. 126, par. 42; article 3896, R.S. 1925; articles 23 and 27, Code Criminal Procedure 1925.

In support of the latter or statutory reason above discussed, we cite the following authorities which we consider to be conclusive and controlling: Article 5976, R.S. 1925; Tyson v. Britton, 6 Tex. 222; Roberts v. Yarboro, 41 Tex. 449; Etter v. Missouri P. Ry. Co., 2 Willson, Civ.Cas.Ct.App. § 58; American Rio Grande Land & Irr. Co. v. Karle (Tex.Civ.App.) 237 S.W. 358;

Bryan v. Texas Life Ins. Co. (Tex.Civ. App.) 248 S.W. 163; Herring v. Houston Nat. Exch. Bank (Tex.Civ.App.) 249 S.W. 281; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799.

Defendant contends that the trial court committed error in permitting the plaintiff, state of Texas, to amend its original petition, setting up new and additional charges against defendant, without, after the filing of such amendment, requiring plaintiff to make application and give notice and otherwise follow the statutory proceedings which are necessary in an original proceeding of this nature. It is undisputed that all statutory requirements were met when the suit was originally filed, and that defendant was compelled to answer in the proceedings as originally instituted. Furthermore, it is clear from the record that no harm or injury resulted, or could result, to defendant by reason of the fact that the trial court declined to require plaintiff to comply with all statutory requirements necessary in the filing of the original petition, following the filing of the amended petition. As a matter of fact, the record plainly shows that when this question was raised, the trial court stated to defendant that if he was not ready on any of the new charges contained in the amended petition, it would entertain a motion for continuance, which would thus give defendant ample time and opportunity to get ready; that defendant stated in open court that he was not asking for a continuance, and certainly by the strongest inference, if not by affirmative statement, that the defendant was then ready for trial; that he was not surprised; and that the sole ground of his exception or contention was the question of law that, in the absence of the statutory requirements suggested by defendant as to the amended petition, the court was without jurisdiction to proceed with the case.

On this question of law, and as above suggested, our statutes, and particularly article 5981 of the Revised Civil Statutes, provide: "The trial and all the proceedings connected therewith shall be conducted as far as it is possible in accordance with the rules and practice of the court in other civil cases." Surely no serious contention could be made that plaintiff was not authorized to amend its petition, or that the court was without authority to permit the same in its discretion and under the particular facts of the case as in any other ordinary civil case. In view of the fact that the record clearly shows no harm or injury to the de-

fendant in the instant case, and under the law providing that such special proceedings shall, as far as possible, be governed by the rules and practices of the court as in other civil cases, the trial court committed no error in permitting the amendment complained of to be filed by plaintiff, and the trial to proceed. Articles 5976, 5977, 5978, 5979, 5980, 5981, R.S. 1925; 4 Tex. Jur. 642; Poe v. State, 72 Tex. 625, 10 S.W. 737; Puntney v. Moseley (Tex.Civ.App.) 237 S.W. 1116; St. Louis Southwestern R. Co. v. McDermitt (Tex.Civ.App.) 175 S.W. 509; Houston & T. C. R. Co. v. Walker (Tex.Civ.App.) 167 S.W. 199; Rabb v. Rogers, 67 Tex. 335, 3 S.W. 303.

We, therefore, overrule all of defendant's assignments and propositions relating to the action of the trial court in this respect.

█ We next pass to the contentions of defendant that, pursuant to the provisions of the statutes applicable thereto, the state of Texas and counties therein containing more than 190,000 population, which includes Bexar county, realizing the enormous work incident to the duties and responsibilities of the county clerk's office in the matter of receiving, recording, and accounting for finances of the office, and control over the finances of the office, are of such magnitude and nature, laws have been passed relieving the county clerk of such duties and responsibilities, and placing same under the jurisdiction and responsibility of the county auditor; and that under such laws and by reason of the facts existing in respect to the work of the county clerk of Bexar county, the defendant county clerk has been relieved of such duties and responsibilities as a matter of law; and that the trial court erred in not sustaining defendant's several exceptions to plaintiff's pleadings in this respect, and in permitting the jury to pass upon the testimony relating to the charges or causes for removal based upon his handling of, or failure to properly handle, the finances and records of his office.

A careful consideration of the provisions of article 1656a, Revised Civil Statutes (Acts 1933, c. 98, § 1), as it existed prior to its amendment effective May 1, 1935 (Vernon's Ann.Civ.St. art. 1656a), shows that it vested in the county auditor the "discretionary" power, should he "deem it to be to the best interest of the county or deem it necessary in order that the provisions of this law may be better enforced or in order that the legislative intent to conserve the funds be carried out," to prescribe that all fees and moneys collected by the county clerk be turned over to the county treasurer by such officer, as collected, to be deposited in the county depository in a special fund by the county treasurer to the credit of such clerk. The record before us very definitely shows that the county auditor of Bexar county never in fact exercised such discretionary power given to him in this respect, and that such auditor never in fact placed such system in effect. Therefore, it is plain as a matter of law that the county clerk was relieved of no duty in connection with the handling and the custody of the moneys of his office under such statute which was then in effect, and the trial court committed no error in its rulings in this regard. Since the effective date of said statute as amended, May 1, 1935, such requirement is mandatory; but at the time of the complaints and charges made against defendant, the rulings of the trial court, and the findings of the jury in the instant case, such law was not in effect, inasmuch as the record clearly demonstrates as a fact that the county auditor had not exercised his theretofore existing discretionary power.

Furthermore, even if the county auditor had, prior to such time, exercised the discretionary power vested in him by law, to prescribe that all fees and moneys collected by the county clerk should be turned over to the county treasurer, as collected, the county clerk—defendant herein—would not be relieved of the responsibility and liability for the shortage in the funds of his office and the conversion of $817.28 out of the cash on hand in his office between January 1 and January 17, 1935, nor for the other irregularities in the finances thereof, for the very simple reason that said shortage was clearly shown to have been from the cash funds of his office on hand that were never deposited anywhere; and the said sum of $817.28, alleged by plaintiff and found by the jury to have been so converted out of cash on hand, never reached any depository, and such shortage and conversion formed the basis of several of the complaints and causes for removal alleged by the plaintiff on the grounds of "incompetency, official misconduct, and gross carelessness," which were properly pleaded and definitely found by the jury, on sufficient evidence and under proper charge, as affording sufficient basis for his removal from office.

The record clearly reveals that the only requirement made by the county auditor of

the defendant in this respect was that he deposit all funds of his office in the county depository bank, instead of three banks in which he had previously made his deposits. Apparently, this was done to the end that all funds of the office would be secured against possible bank failure under the security required by law to be furnished by the depository for public funds.

The record further clearly shows that the funds alleged and found to have been converted, or permitted to be ·converted, by the defendant, were not deposited in the depository bank, or in any bank; that they were public funds received and retained in the possession of the defendant in his official capacity as county clerk, between January 1 and January 17, 1935, and which· were permitted to be taken by various individuals, including, it is alleged, the defendant himself; and that the only record, if any, of such "takings" was in the form of "duebills" or "I. O. U.'s" left in or around defendant's desk or office, and that no record of the same was made in any permanent record as required by law, or at least as required in the ordinary and careful management and handling of public funds. By no theory of construction or stretch of the imagination could this or any other court hold, as a matter of law, from a fair consideration of the applicable statutes and the facts clearly established in the record, that defendant was relieved of his plain public duties in respect to the handling of such public funds, or justified in permitting the condition to exist in respect to the "taking" of such funds under the circumstances enumerated. It is our opinion, and we hold as a matter of law, that the defendant was not relieved of his legal duties and definite responsibilities under the terms of the statute as contended by him, and that the trial court committed no error in its rulings upon the demurrers and exceptions relating thereto, and in permitting the jury to pass upon the facts as alleged and under the appropriate charges and definitions submitted in connection therewith. Article 1656a, R.S., 1925, Acts 1933, 43d Leg., p. 217, chap. 98, § 1; 34 Tex.Jur. 451; Lueders v. Ehlinger (Tex.Civ.App.) 31 S.W.(2d) 1099; article 1675, R.S. 1925; Acts 1905, p. 381; articles 1607 to 1644, R.S. 1925.

■■ Considering now the other defense to the causes directed against him, to the general effect that the office of the county clerk of Bexar county requires a great amount of detail work, employing more than fifty people; that no one person could keep familiar with the details of the office, keep within his mind an understanding or knowledge of the duties performed by such large number of people; that. such employees perform acts separate and apart from each other; and that under the law the chief deputy of the county clerk's office and other special deputies are charged by law with the administration and responsibility of their departments, thus relieving the county clerk of such duties and responsibilities—we give attention to all assignments and propositions relating thereto, and as so fully briefed by able and experienced counsel for the defendant.

It may be true, as contended by defendant, that by reason of said statutes prescribing the duties of deputy and other special clerks, they are charged with specific and legal duties for which they could be properly held to account, while at the same time no successful charge might be maintained against the county clerk in connection therewith. However, it is our opinion that it was not the purpose or intent of the law, in placing special duties and responsibilities upon deputy clerks and special clerks, to relieve the chief—the duly elected and responsible head of the office—who holds a distinct and important public trust, from all performance of his important duty and responsibility prescribed ·by law to supervise and control at least in a general way. and in a reasonably efficient manner, all affairs of his office. The record before us shows that plaintiff specifically alleged that during at least the period of January 1 to January 17, 1935, the defendant performed no duty, and exercised no care over the affairs of his office, and of the public funds paid in and handled therein during such time; that under such pleading based upon competent and sufficient testimony, the jury definitely found as a fact that defendant performed no duties during such time; and this court, under such circumstances, is without authority to disturb such findings, or the judgment entered by the court pursuant thereto, removing defendant from office. Article 1938, R.S. 1925; article 3902, R.S. 1925, as amended by Acts 1933, c. 220, § 3; 9 Tex.Jur. 243; 34 Tex.Jur. 606.

■ By allegations or causes numbered 16 to 23, inclusive, plaintiff alleged that defendant had been guilty of official misconduct, in that on or about the 11th day

of March, 1935, he swore to and filed with the district clerk of Bexar county an annual report containing a list of the deputies and assistants employed by him as county clerk, together with the salaries paid to each; that in said report the defendant did willfully state that he paid to a designated deputy a specific amount as salary for the year 1934, whereas in truth and in fact he paid to such named deputy a less amount than stated and sworn to; that the difference in the amount of the salary defendant did falsely swear that he paid, and the amount which he actually paid, was retained by the defendant or paid back to him under a prearranged and required agreement, for his own use and benefit; and that such false swearing in reference to the exaction, retention, and use of such money, as alleged, constituted official misconduct.

Defendant takes the position, and argues at length, that the trial court committed error in not striking such causes from the pleadings, and in permitting the testimony adduced in connection therewith, on the ground, as well as other stated reasons, that such handling of the funds as complained of, if such funds were so handled as alleged, took place prior to the 1st day of January, 1935, and before the defendant "qualified" for his present term of office; and that under the law he could not be removed from office on any alleged grounds, causes, or charges arising prior to the date of his qualification. It is true, as asserted by defendant, that under the terms of the applicable statute, some courts have held that an officer cannot be removed for causes or charges arising prior to the date of his qualification on January 1st, and after the date of his election at the general election in November, prior thereto. Those cases, as all others generally speaking, rest upon the facts of the particular case. It seems clear to the writer that it was not the purpose or intention of the Legislature, in the enactment of the statute in question, to leave the public helpless or without power to remove from public office one who succeeds himself, if such officer should be in fact guilty of misconduct after the date of his election in November—the date on which it is presumed the electors or voters had the opportunity to pass upon his conduct and character—and the first of January thereafter, when he qualifies or takes the oath for his succeeding term. Such a construction of the statute defeats the true purpose of all laws in respect to the removal of public officials for the stated period, and is without reason or justification in any respect. However, in the instant case, we are not confronted with the requirement to give a different construction to such holdings, and at the same time comply with our duty to affirm the judgment of the trial court herein.

The causes or issues in this regard, those of false swearing to an official report, are centered and grounded on the undisputed facts in the contents of the annual report, sworn to and filed by the defendant with the district clerk on the 12th day of March, 1935—some two and one-half months after he qualified or took the oath of office and during the very term in which he is charged with such official misconduct. The trial court properly held that the plaintiff, state of Texas, in connection with its proof of the false swearing charges against the defendant on March 12, 1935, could establish such false swearing by a showing of the facts contained in such annual report sworn to and filed on the date stated, though the actual facts about which he swore transpired prior to January 1st. The law does not require foolish or meaningless things. It is the offense of false swearing with which the defendant was charged, and which is asserted by the state as a proper ground for his removal from office, and not the facts related or the recitations contained in the instrument. We, therefore, overrule all of defendant's contentions in reference to all such rulings of the court in connection with said alleged causes for removal, and hold that the trial court committed no error in overruling defendant's exceptions to the pleadings, admitting the testimony in support thereof, and submitting the issues to the jury upon which it found defendant guilty of the charges in this respect. Article 3897, R.S., as amended by Acts 1930, 4th Called Sess., c. 20, § 5 (Vernon's Ann.Civ.St. art 3897); articles 102, 302, 310, Penal Code; McKinney v. State, 104 Tex.Cr.R. 315, 283 S.W. 798; Brackenridge v. State, 27 Tex. App. 513, 11 S.W. 630, 4 L.R.A. 360; 17 Tex.Jur. 366; Jones on Evidence (Civil Cases) 3d Ed. pp. 227, 228; Neill v. Keese, 5 Tex. 23, 51 Am.Dec. 746; Maryland Casualty Co. v. State (Tex.Civ.App.) 81 S.W.(2d) 165; article 5986, R.S. 1925; Reeves v. State, 114 Tex. 296, 267 S.W.

666; Reeves v. State (Tex.Civ.App.) 258 S.W. 577; Flatan v. State, 56 Tex. 93, 101.

It is our opinion that none of defendant's exceptions or objections to the charge of the trial court are well taken, and we overrule all such, and sustain the action of the trial court in refusing to give any of the requested special charges asked by the defendant. In his charge to the jury the learned trial judge correctly defined the duties and responsibilities of the county clerk under the laws of this state, and properly submitted to the jury, under clear, appropriate, and sufficient definitions, the issues or causes of removal as properly alleged and supported by the testimony adduced on the trial.

As above stated, the jury sustained all of the alleged causes of official misconduct, gross carelessness, and incompetency in public office charged against defendant, and found him guilty on each of eighteen separate and distinct counts. A finding of guilt, or the sustaining of the allegation or cause of any one of such charges, by a verdict of the jury, would authorize and justify the judgment for removal as entered herein. In some instances, the causes or allegations against defendant were practically undisputed. To say the least of it, the record shows that the jury sustained each of the alleged causes and found the defendant guilty, on conflicting testimony, on eighteen separate and distinct allegations of official misconduct and wrongdoing in public office. The record before us reflects a course of conduct, on the part of the defendant, in an important position of public trust, which, in our opinion, fully justified the verdict of the jury and supports the judgment. 25 Tex.Jur. 481; St. Louis Southwestern R. Co. of Texas v. Neely (Tex.Civ.App.) 296 S.W. 948; Robinson v. Randall (Tex.Civ.App.) 69 S.W.(2d) 184.

We have not undertaken to discuss, separately and in detail, each of the assignments and propositions raised by the defendant, but we have considered each and all of them, in the light of the record before us, and we find no error on the part of the trial court in any instance.

A public office is and should always remain a distinct and emphatic public trust. In addition to the general laws of the state which call public officers to strict account, in connection with the discharge of their duties, the Legislature has wisely provided a special, distinct, and prompt method of procedure which is calculated, if properly administered, to relieve the public of the services or abuses of an individual who has willfully violated his trust or negligently permitted the discharge thereof to become a mockery and a reflection upon the true purposes of the office, and the very integrity of the government itself. The record before us clearly reveals that such special laws, enacted for the purpose stated, have been properly and efficiently brought into execution in this case.

We find that the trial court had jurisdiction in this cause; that it committed no reversible error in the trial thereof; that by an appropriate charge it properly submitted to the jury eighteen alleged causes for removal against the defendant; that the jury found defendant guilty of all the alleged causes which challenged his right and authority to continue in office. The defendant, contrary to an apparently growing practice, charges no misconduct of the trial jury or any improper argument thereto. And the trial court, basing the same upon the findings of the jury and the law applicable to such case, entered the judgment herein complained of, which removed defendant from the office of county clerk of Bexar county, declared the same vacant, and appointed another for the time being to discharge the duties of such office.

It is our opinion that the case has been fairly tried and the judgment duly and lawfully entered, and that it should be in all things affirmed, and it is so ordered.

Affirmed.