### HOLLOWAY WADE, LUKE ROGERS AND MARVIN KING v. THE STATE.

No. 18301.   Delivered May 13, 1936.

The opinion states the case.

*Denman & Fowler,* of Nacogdoches, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—The three appellants and James (Sug) King were jointly prosecuted for dynamiting fish in the Angelina River.   The three appellants testified.   They were convicted and punishment assessed against each at a fine of $25.00 and 30 days in jail.   Sug King did not testify.   He was acquitted.

The case is brought here on the sole proposition that the circumstantial evidence upon which the State relied is insufficient.

On July 3, 1935, Earl Corley, Don Rawlinson and Emory Rogers were camped about fifty yards below the "Hatchett's Ferry" bridge over the Angelina River.   About ten o'clock the three appellants and Sug King crossed the bridge from the Nacogdoches County side into Cherokee County.   They were in a car.   After crossing the bridge they turned up the river.   About noon two charges of dynamite were exploded in the river about two hundred yards above the bridge.   Corley walked up the river to within about forty yards of where the explosion occurred.   He testified as follows:

"I saw two men, one a small man and the other a large man, go into the river undressed and take some fish out of the river where the dynamite had been exploded.   I did not

recognize either of them. * * * The boys I saw in the water kinder resembled the King boys. * * *—but I didn't recognize either one of them; I know James King and Marvin King and I believe I could have recognized them from where I was standing; I am not telling the jury it was Marvin and James King that I saw in the water."

Corley walked back towards the bridge. About 20 minutes later the three appellants and James (Sug) King came down the river on the Cherokee County side. Corley talked to them. Their clothes were dry. They had no fish. As we understand the record the point at which Corley saw and talked to the four named parties was between where they had parked their car and where the dynamite had exploded. They were going towards their car when Corley talked to them. They went on to the car, got in it and crossed the bridge back into Nacogdoches County. About the only other suspicious fact presented by the State was that Rawlinson and Emory Rogers testified that as the four came back across the bridge they put their hats against the windows of the car—as witnesses thought—to keep from being recognized.

Many people were fishing on the river and many "set" hooks were in the water. A party was camped some four hundred yards above the bridge. It was between this camp and the bridge that the explosion occurred. No witness knew the number of people in this camping party nor who they were.

The three appellants testified substantially as follows: They secured some hooks and went to the river for the purpose of setting them out. (They are corroborated on this point by State's witness Rawlinson, who testified that he had loaned Marvin King fifteen fish hooks that morning at the store of witness' father). They parked their car a hundred and fifty yards above the bridge and walked up the river a mile or more looking for places to set out their hooks, but all available places seemed already to have been used. It was thundering and threatening rain. They finally gave up the idea of fishing, returned to their car and left. They admitted talking to Corley, denied placing dynamite in the river or taking any fish therefrom, and denied trying to hide their identity by hiding their faces when re-crossing the bridge. They passed the camp referred to by State's witnesses as being four hundred yards above the bridge in going up and coming down the river, but saw no one about the camp.

Considering the State's evidence in its strongest light it scarcely raises a suspicion against appellants. Corley, who

knew all the parties, refused positively to identify the men he saw in the water as any of the four.  Giving the fullest effect to the testimony of the other two State's witnesses that the parties were attempting to conceal their identity while recrossing the bridge, it seems to lose its force when it unquestionably appears that they were within thirty yards of Corley when returning to their car, which witness knew all of them, and talked to them.

Where the State relies on circumstantial evidence · it must be stronger than suspicion.  It must not only show the guilt of accused, but must exclude every other reasonable hypothesis except their guilt.  We can not say the evidence here excludes the hypothesis that the dynamite may have been placed in the river by some of the many other persons who were fishing on the stream on the day in question.  Branch's Ann. Texas P. C., Sec. 1877, p. 1042, and cases therein cited, including Hernandez v. State, 72 S. W., 840; 18 Texas Jur., Sec. 321, page 445, and cases there annotated; Dean v. State, 93 Texas Crim. Rep., 132, 245 S. W., 921; Pozil v. State, 104 Texas Crim. Rep., 244, 283 S. W., 846; Latham v. State, 117 Texas Crim. Rep., 362, 86 S. W. (2d) 763.  Many other cases will be found noted in those named.

For lack of sufficient evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*