## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. NEELY. (No. 3417.)

Court of Civil Appeals of Texas. Texarkana. June 13, 1927.

Rehearing denied June, 23, 1927.

1. **Master and servant ⬥286(27)—Negligence held for jury, where employee suffered injuries to fingers from using hand to adjust and unload railway car wheels.**

In employee's action against employer for injuries to fingers occasioned while straightening railway car wheels preparatory to unloading, evidence of negligence of foreman in directing plaintiff to adjust and unload wheels by use of his hands without aid of wheel stick *held* to make issue for jury.

2. **Master and servant ⬥264(1)—Finding of one act of negligence alleged held to support employee's recovery for injuries.**

Finding of jury that employer was negligent in directing employee to use hands in straightening and unloading car wheels *held* sufficient to support judgment allowing employee recovery for injuries, even if other ground of negligence relied on was not supported by evidence.

3. **Judgment ⬥19—Evidence, supporting finding as to one ground of negligence alleged, will support affirmative recovery, in action tried on special issues, though other ground is unsupported.**

In action for injuries tried on special issues, judgment, allowing affirmative recovery, should be affirmed, if evidence supports finding based on one ground of negligence alleged, though second ground claimed is without evidence.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Tom Neely against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Marsh & McIlwaine and Bryan Marsh, all of Tyler, for appellant.

Butler, Price & Maynor, of Tyler, for appellee.

LEVY, J. The appellee, an employee of appellant, was unloading railway car wheels from a box car, and in the course of the work received an injury to the fingers of his right hand. He has sued to recover damages for the injury.

The appellant had received for its use a carload of car wheels, some of them weighing 650 pounds, and some weighing 750 pounds. In the center of the 650-pound wheels was an eight-inch opening, and in the 750-pound

wheels was a nine-inch opening, for the journal, or axle, to fit in. The wheels were loaded, in the first instance, in the car in two rows running lengthwise of the car, leaning against each other and "tilting about 45 degrees." In the center between the two rows a line of wheels were placed, standing upright. When the car was placed on the wheel track for unloading, the foreman, Mr. Joe Smith, Joe Miller, and the appellee entered the car and began to unload the car wheels. The railway track runs east and west. The wheels were unloaded by rolling them to the door of the car and out through the door, dropping through their own weight to the ground. Other men on the ground then moved the wheels to another point. The appellee and the foreman were the only witnesses called to testify about the occurrence in suit. The appellee, as material to set out, testified:

"We began to unload the wheels under the direction of the foreman, Mr. Joe Smith. We got all the wheels in the west end of the car unloaded. We then commenced unloading the two tiers in the east end of the car. We first got the wheels standing in the space between the two rows. We then started on the row on that side of the car nearest to the open door. There were eight or nine wheels in this tier. There were about six leaning east against the car end. There was something like four leaning west. They were shifted out of their position. They were caught against a piece of timber by the side of the door. Just after we had taken hold of the first wheels in the tier, Joe Miller says, 'Look out, Tom; they are going to fall over; they are leaning, and liable to fall any minute.' When Joe Miller said that, I then says, 'Well, I will get my wheel stick and raise them up.' When the wheels are leaning against each other too much, so that we can't lift them up with our hands, we take the wheel stick and raise (prize) them up straight. I reached and get the stick to use in raising up the wheel leaning towards the west. I could have done that with that wheel stick. That is a safe and the usual way to do it. Mr. Joe Smith says, 'Put down your stick, Tom, and come and pull them back upwards. I will hold them up to keep them from falling on you.' So I began to pull them back upward. I got the first wheel back up straight, and had about gotten the next one up which was by the one Mr. Smith was holding, and he let them all go and come together, and they caught my hand resting on the wheel and mashed the fingers. * * * I was pulling them back. I got two pulled back, and had got another one about that far back, and he (Smith) then let them fall against my hand. * * * The wheels fell over against my hand, the wheels that Mr. Joe Smith was holding. He let them get loose from him, and they fell against my hand. He was holding them. * * * I don't know how many wheels Mr. Smith was holding. He was holding by the flange of the first wheel. The wheels were leaning towards where Mr. Smith was. They were not sitting up straight. If I had used the wheel stick in straightening the wheels as I started to do, I couldn't have been hurt by the wheels falling. I wouldn't have used my hands

if the foreman had not told me to do so. I used my hands because he told me to do so. * * * That is my best recollection of how the injury occurred. That is the way it occurred."

It appears that a wheel stick was furnished by appellant as a means of prizing up the car wheels when down. As testified by appellee:

"When the wheels in the car are leaning too much, so we can't lift them up straight with our hands, we take the wheel stick and raise them. The wheel stick is about five and a half feet long. One man uses the wheel stick to prize up the wheel, and another man behind catches the ends of the wheel and lifts it. The two working together prize up and raise the wheel up."

The foreman, Joe Smith, testified:

"Nothing was said about a stick being used in the unloading. I did not see Tom with a stick and tell him to put it down and not use it. It was not necessary for a stick to be used in that particular wheel. The wheel stick could have been used in some of the wheels, but not on that one. The wheel was practically straight up. The wheels had not fallen down; they stood up. The thing that caught Tom's hand was just a sluing around of the second or third wheel back from the one I was holding; it just came around and caught his fingers. They were leaning back towards the east wall of the car, and the slacking of the front wheel of the row let the others next and near it sort of careen around. The two just slued around; none of them fell down. Part of the tier were leaning east, and part were leaning west. * * * Tom and I were not both on the same side of the tier of wheels. I was in front of them, and Tom was on the other side of them. The wheel was leaning towards me, and it was not leaning towards Tom. He and I both had hold of the same wheel. I didn't turn the wheel loose at all. The wheel that I had hold of caught Tom's fingers, but the one behind it was the one that slued around and mashed his fingers. His fingers were caught between the two wheels—the one I held and the one behind it. I kept holding back on my end to prevent it from getting any tighter on his hand, or it might have slued a little farther. It could have. That's what I was afraid of. There were three wheels leaning against three or four back of them. The three front ones were pretty near, but not straight up. They were leaning. I put my hand on the front wheel, the flange of it, and said to Tom, 'You put your hand behind it, and we will pull it right up, and you can then roll it away.' Tom put his left hand there behind and pushed with his left hand, resting his right hand on either the second or third wheel from it. When this wheel we were righting up slacked the other two behind, it slued around and caught Tom's fingers where they were resting. They didn't roll around; just swung around far enough to catch his fingers. The slacking of the first wheel caused the others behind it to swing around. He had hold of the same wheel I did, with one hand. It was the second or third one back that caught his right hand. * * * The wheels could have been straightened up by using a wheel stick.

It was only to be used when a wheel was down. It is used to prize up a wheel. The stick was not used because we didn't need it."

The petition alleged, as separate grounds of negligence, that (1) the foreman, Joe Smith, directed and commanded plaintiff to adjust and unload the wheels in question from the car by using his hands without the aid and use of a wheel stick, and (2) after advising the plaintiff that he would hold the wheels and prevent them from falling, the foreman, Joe Smith, carelessly caused or permitted the wheels to fall upon plaintiff's hand. The case was submitted to a jury on special issues, upon the two grounds of alleged negligence, and, in keeping with the findings, judgment was rendered in favor of plaintiff for $1,500.

The complaint on appeal is to the point that there is no substantial evidence of probative force upon which to base either one of the grounds of alleged negligence.

[1-3] It is believed that there is sufficient evidence to show that the injury was in consequence of the first alleged ground of negligence; that is, to warrant the submission of the issue to the jury for finding thereupon.

It is admittedly shown that the fingers on appellee's right hand were mashed by the car wheels coming together at the time in question. The injury probably might not have resulted, had the wheel stick been used by appellee. Whether or not the foreman directed appellee not to use the wheel stick at the time, and whether or not the proper method and safe way of raising up the wheel was by the use of the wheel stick provided for the purpose of performing such work were matters of sharp differences of opinion between the foreman and the appellee. And a majority of the court think that it is not certainly clear that the injury, as shown, was not in consequence of any negligence on the part of the foreman as alleged in the second ground. The evidence in that respect, as reflected in the record, is too indefinite and confusing to warrant disturbing the trial court's conclusions. But all the members of the court agree that the first ground of negligence is sufficient to support the judgment and that, accordingly it should be affirmed, even if the second ground is without evidence to support the verdict; the case being tried on special issues and not submitted on a general charge.

As respects the contention that the foreman negligently dropped the car wheel, the conclusion most satisfactory to the writer is that the wheel lying behind the wheel that was being righted slued and lurched towards the wheel on which the right hand of appellee rested, causing the injury to happen. The physical evidence tends to negative a conclusion to the contrary. The sluing of the wheel was sudden and unexpected and without fault on the part of the foreman.

The judgment is affirmed.