**Simeon H. WALL, Appellant,**

v.

**Keta Jean NOBLE, Appellee.**

**No. 9331.**

Court of Appeals of Texas,
Texarkana.

Jan. 21, 1986.

Rehearing Denied Feb. 25, 1986.

---

John M. Smith, Roberts, Harbour Law Firm, Longview, for appellant.

Carl David Adams, Adams & Francis, Dallas, for appellee.

PER CURIAM.

This is an appeal from a judgment entered upon a jury verdict in a medical malpractice suit. The judgment of the trial court is affirmed.

The plaintiff in the trial court, now appellee, was Ms. Keta Jean Noble. Ms. Noble was at times pertinent to this case a housewife and a resident of Longview, Gregg County, Texas. In March 1978, when she became a patient under Dr. Simeon H. Wall's care, she was twenty-four years of age and married. Though a housewife, Ms. Noble had received training and had previously worked as a fashion model. In early teen years she began developing large breasts and became self-conscious of the condition. Prior to March 1978, her breasts had sagged to a degree that caused her to consider consulting medical specialists. Besides disquietude over her physical health and appearance, she also felt that her breast condition hindered progress in the modeling field. Ms. Noble wanted, and by surgery hoped to have fullness restored to her upper breasts and the existing sag eliminated. On recommendation of her sister-in-law she consulted Dr. Wall and a doctor/patient relationship followed.

The defendant, now appellant, was Dr. Simeon H. Wall. The doctor was married, a resident of Louisiana, with an office in Shreveport, Louisiana, and at times pertinent hereto, satellite offices in Marshall and Longview, Texas, in which Dr. John P. Valiulis was a professional partner. Dr. Wall was a board certified licensed physician specializing in the field of plastic and reconstructive surgery.

Ms. Noble filed suit alleging negligence on the part of Dr. Wall in performing three surgeries, negligence in failing to obtain her informed consent prior to each surgery, and negligence in engaging in a sexual relationship with her, a patient, while she was under his treatment. She alleged the sexual conduct represented a breach of fiduciary duties of loyalty and good faith, and amounted to a conflict of interest. The three operations in question were performed in Louisiana at either a Bossier City or a Shreveport hospital selected by Dr. Wall.

ORDINARY NEGLIGENCE

The trial court charge required the jury to answer seven special issues and thereby determine the occurrence or not of conduct, acts and omissions alleged to be negligent. The jury answered these special issues in the affirmative, and found the occurrences inquired about, except that submitted by Special Issue 10, to be negligence and the proximate cause of damage to Ms. Noble. In answer to other special issues, the jury found the plaintiff suffered actual damage totalling $231,883.25.

Dr. Wall's points of error direct attention to his claim that the jury's answers to five of the seven special issues concerned with conduct, acts, and omissions alleged to be negligence are not supported by legally or factually sufficient evidence. First consideration will be given Special Issue 1; it and the jury's answers are in this language:

DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE that on the occasion of the first surgery, Dr. Wall undertook to treat Keta Noble by performing a breast lift (mastopexy) rather than a breast reduction?

Answer "we do" or "we do not."

Answer: We do.

This Court must, in determining no evidence points, consider only the evidence in its most favorable aspect supporting the jury's finding and give effect to all reasonable inferences properly drawn therefrom. Also, in determining factual insufficient evidence point this Court must consider the supporting evidence and determine whether its probative effect is of sufficient strength to support the finding. And further, all evidence must be considered in determining whether the jury's finding is so contrary to

the great weight and preponderance of the evidence as to be unjust. *Elliott v. Great National Life Insurance Co.,* 611 S.W.2d 620 (Tex.1981); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

Ms. Noble offered as a witness a board certified plastic surgeon from Tyler, Texas. The witness did not criticize surgical skills used in executing the surgery; the decision to do the surgery performed on the patient was the focus of his censure. It was his opinion that Dr. Wall's decision to and performance of the surgery undertaken in the first instance fell below the standard of care practiced by board certified plastic and reconstructive surgeons. The opinion expressed is couched in terms of departure from the standards of care of a reasonably prudent board certified plastic and reconstructive surgeon.

■ While Dr. Wall was a witness in his own behalf, he identified a Dr. Goulian as authoritative in the field of plastic surgery. A published article by Dr. Goulian, which was read to the jury, said that when a patient's breasts are both large and sagging, a mastopexy:

> [W]ill fail, unless the breast size is reduced. Reduction of the skin envelope alone compresses the hypertrophic [large] breast and immediately improves the ptosis [sagging]; however, the hypertrophic component will prevail, it will come back, and the ptosis will reoccur when the resulting scar tissue becomes stretched. If nature is unable to support a large breast, it's foolhardy to think that scar tissue will. Neglecting this principle is the most common cause of failure after mastopexy.

The evidence in the record, if believed, is sufficient to legally and factually support the jury's finding to Special Issue 1. Nor is the jury's finding so contrary to the great weight and preponderance of the evidence as to be unjust.

The trial judge submitted Special Issues 10, 13, and 16 to determine whether or not Dr. Wall's disclosures of risks and hazards of the treatment and procedures he proposed in each of the three operations met the standards of a reasonably prudent board certified plastic surgeon and provided a basis for Ms. Noble's informed consent thereto. The jury found in Ms. Noble's favor on each of these special issues. However, with respect to the first surgery (Special Issue 10), the jury found that Dr. Wall's failure was not negligent and as instructed did not answer the proximate cause or other subsidiary issues.[1]

■ In a multiple grounds of recovery case, as this is, when the grounds are not inconsistent, either factually or in legal theory, recovery may be had on any or all grounds that may be established. *Wilkinson v. Lindsey,* 321 S.W.2d 158 (Tex.Civ. App.—Amarillo 1959, no writ); *St. Louis Southwestern Railway Co. v. Neely,* 296 S.W. 948 (Tex.Civ.App.—Texarkana 1927, no writ); 33 Tex.Jur.2d *Judgments* § 71 (1962); G. Hodges, *Special Issue Submission in Texas* 76 (1969). Here judgment may rest upon the jury findings[2] to Special Issues 1, 4, 7, 13 and 16 unless the findings must be disregarded for reasons hereafter discussed.

The trial court submitted Special Issue 19 in this language:

> DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE that at any time during the patient-doctor relationship between Keta Noble and Dr. Wall,

---

**1.** As to Special Issues 13 and 16, which pertained to the second and third surgeries, the jury found failure to meet the appropriate disclosure standards to be negligence and the proximate cause of damage to Ms. Noble. The sufficiency of the evidence to support the jury's answers to these issues is not questioned in Dr. Wall's brief.

**2.** The evidence supporting Special Issues 4, 7, 13 and 16 has also been examined and found legally and factually sufficient to support the jury findings but an extension of the opinion for discussion is not justified.

that Dr. Wall and Keta Noble engaged in sexual conduct?

The jury found in the affirmative and also found (Special Issue 20) that the conduct interfered with the patient-doctor relationship, (Special Issue 21) that the conduct was negligence, and (Special Issue 22) the conduct was a proximate cause of damage to Ms. Noble.

Besides challenging the sufficiency of the evidence to support the jury's answers to Special Issue 19, reversible error is urged by Dr. Wall on the grounds that the judgment entered erroneously included an award for damages (1) "resultant" from a sexual relationship existing between the doctor and patient "because such conduct does not constitute a recoverable cause of action," (2) because allegations of sexual conduct "serve no other purpose but to create bias and prejudice," and (3) "any sexual relationship ... had ceased more than two years prior to ... suit and was ... barred by the two-year statute of limitations."

Whether the evidence is legally or factually sufficient to support the jury finding to Special Issue 19 becomes immaterial in view of the conclusion reached that the judgment rendered is supported by the jury's verdict on Special Issue 1 and subsidiary findings thereunder. For the same reason, it is not necessary to determine whether or not the conduct inquired about in Special Issue 19 constitutes a recoverable cause of action or to determine the limitation question.

■ However, the point that allegations of sexual conduct "serves no other purpose but to create bias and prejudice" requires examination. There is some sparse evidence in the record from which a jury might infer that the doctor induced the patient to participate in the initial sexual engagement on the pretext of medical treatment. The evidence, if believed, shows the sexual liaison began on a checkup visit to the doctor's office after the first surgery and before subsequent surgery. Ms. Noble was his patient, in his examination room under his care and treatment.

His sexual advance was, according to her, accompanied with the statement, "I am your doctor—trust me" repeated frequently. In the context of a doctor in the process of treating a patient, where treatment ended and a consensual sexual liaison began was a question for the jury. The expert witness produced by Ms. Noble testified that a sexual liaison as described by Ms. Noble would cause a loss of objectivity by the treating physician. The evidence of the sexual liaison was relevant, competent, and material in determining the physician's compliance with the standards of care he was obligated to observe and in determining degrees of negligence. *See* H. Wendorf & D. Schlueter, *Texas Rules of Evidence Manual,* Rules 401, 402, 403 (1983), and cases cited. If the evidence created bias or prejudice aside from its relevant purpose Dr. Wall did not object or move to limit its consideration by the jury and waived complaint on that ground. 35 Tex. Jur.3d *Evidence* §§ 28, 33, 34 (1984).

■ Assuming for the purpose of argument that Special Issues 19 and 20 are evidentiary in nature or do not support a recoverable cause of action and were improperly submitted, and that submission of the issues focused attention upon and probably magnified the importance of the sexual liaison evidence, error is also waived or harmless. The evidence of the sexual liaison was relevant and admissible upon material issues in the action, and no effort was made by Dr. Wall to limit its consideration to relevant issues and waived error in that respect. The record contains nothing to indicate the jury was inflamed by the evidence and seized upon it as a cause to render a verdict in Ms. Noble's favor. Reversible error is not shown because the evidence in question was admissible for jury consideration on some issues and the error, under the record, would not be calculated to cause and probably did not cause the rendition of an improper verdict. There is no reason to suppose the evidence would not have been fully exploited if Special Issue 19 had not been submitted. Tex.

R.Civ.P. 434; 6 Tex.Jur.3d *Appellate Review* §§ 746, 747, 776 (1980).

## GROSS NEGLIGENCE

The trial court instructed the jury that if it answered in the affirmative any one of Special Issues 1, 4, 7, 10, 13, 16, and 19 (the seven grounds of ordinary negligence submitted) then it would answer Special Issue 23, which was in this form: "DO YOU FIND FROM A PREPONDERANCE OF THE EVIDENCE that any of such conduct was gross negligence?" The jury answered in the affirmative and also found such gross negligence was a proximate cause of damages to Ms. Noble and assessed exemplary damages at $350,000.00. No objection was interposed to the conditional submission of the gross negligence issue.

Dr. Wall undertakes to avoid the effect of the jury's answers on the ground that there is no legal or factual evidence supporting an affirmative answer to Special Issue 23, as well as that there was error in entering an award for damages "resultant" from sexual relations existing between appellee and appellant because such conduct does not constitute a recoverable cause of action. The point of departure for consideration of the points is the rule that exemplary damages may not be assessed unless actual damage has been found. *Longview Savings & Loan Association v. Nabours*, 673 S.W.2d 357 (Tex.App.—Texarkana 1984), *aff'd*, 700 S.W.2d 901 (Tex.1985); 28 Tex.Jur.3d *Damages* § 188 (1983).

■ Earlier it was noticed that the jury answered Special Issue 10 in the affirmative (failure of informed consent to the first surgery), but found the failure not to be negligence (Special Issue 11), thus actual damage on this ground was not shown.

Also the conclusion has been reached that it is unnecessary to determine whether Special Issue 19 should not have been submitted because judgment herein could be founded upon the jury's verdict on other special issues. Error[3] in conditioning an answer to Special Issue 23 upon answers to Special Issues 10 or 19 was waived by Dr. Wall's failure to object to the court's action in so conditioning an answer. 4 Tex.Jur.3d *Appellate Review* § 129 (1980).

*Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981), quotes with approval from *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex. 1970), the rule for testing sufficiency of the evidence to support a jury's finding of gross negligence, to-wit:

In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor.

In *Burk Royalty*, it is also stated that: What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care....

. . . .

A mental state may be inferred from actions. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined

---

**3.** With reference to Special Issues 10, 13, and 16 (informed consent issues), Dr. Wall's brief argues that an affirmative answer to the issue standing alone would not constitute finding that would support exemplary damages. *Gaut v. Quast*, 510 S.W.2d 90 (Tex.1974), is cited in support of the contention. The argument is not supported by the authority. The cause of action in the cited case was grounded on actionable fraud by the doctor. The Supreme Court point-

ed out that there was no finding by the jury that a false representation was willfully made, etc. The instant case deals with a doctor's negligent failure to adequately inform the patient of the perils, etc. of the operation, not a misrepresentation he is alleged to have made. As pointed out it is not necessary to determine questions of this nature as a judgment may be rested upon the jury's answer to Special Issue 1.

in deciding if there is some evidence of gross negligence.

■ A given fact is that Dr. Wall prescribed and performed the mastopexy surgery. Ms. Noble's medical expert said a board certified plastic and reconstructive surgeon would not have done so under the circumstances shown by the evidence, and that a board certified surgeon would have expected the surgery performed to fail. Dr. Goulian's article says it is foolhardy to think surgery of the nature performed would be successful. Following the surgery Dr. Walls gave Ms. Noble, by means of a leaflet handed her by a hospital attendant, a list of activities to avoid for specified periods of time. Included was prohibition of sexual activity. There is evidence that Dr. Wall engaged in sexual activity with Ms. Noble during the forbidden time period with the explanation that "I am your doctor—trust me." From this and the entire evidentiary record, the jury could have concluded Dr. Wall prescribed unnecessary and negligent treatment and, in conscious disregard and indifference to Ms. Noble's rights, welfare and safety, performed the operation knowing the peril of such treatment and that it would cause physical pain and risk to Ms. Noble. The evidence legally and factually supports the jury's answer to Special Issue 23.

Dr. Wall claims under an appropriate point of error that the trial court erred in "applying Texas substantive law" to the case instead of the local law of Louisiana. Under local Louisiana law, he asserts, a plaintiff cannot prosecute a suit of this nature prior to presentment of a claim to an advisory panel for an opinion. Appellant argues, therefore, that the trial court should have abated the suit as the claim was not presented in accordance with Louisiana law.

Conflict of law questions, in this instance whether Louisiana or Texas local law should be applicable to this action, is controlled by *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). That case adopted the "most significant relationship" test. Under the test, the rights and liabilities of the

parties with respect to issues in tort are to be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. Contacts to be taken into account in applying the test include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to the relative importance with respect to the particular issues. The word significant connotes something of importance, of meaning, of consequence, and of value.

The surgeries were performed in Louisiana hospitals, but that contact with Louisiana is of little significance as surgical skill and hospital care are not issues in the case. Dr. Wall is a resident of Louisiana and it may be assumed he was more familiar with Louisiana than Texas local law and Louisiana law, if material, would be uppermost in his mind in guiding his plans and actions.

However, Dr. Wall maintained two offices in Texas, one at Marshall, the other at Longview. He offered his medical specialty and skill in a Texas setting to people in the locality of his Texas offices and in this instance merely went to Louisiana to perform surgery. The injury and negligence charged was referable to action, conduct, and omissions that occurred principally in Texas where witnesses were located. Ms. Noble was a resident of Longview, Texas, and the decision of both parties and agreement relative to the need for surgery were made in Texas at the doctor's office. The relationship between the parties began and ended in Texas. The operation and hospital stay in Louisiana was a mere interlude with little or no significance, as there is no controversy as to operational skill or hospital care.

■ From the record as a whole it appears that the rights and liabilities of the parties should properly be determined by the local law of Texas. The entire basis of

the controversy occurred in Texas. The most meaningful contacts underlying an invocation of state local law therefore occurred in Texas. The trial judge's findings and conclusions in this respect were proper.

All of Dr. Wall's points of error have been considered and overruled. No reversible error is found. The judgment of the trial court is affirmed.

GRANT, J., not participating.