J. Dan HARVEY, M.D. and J. Dan
Harvey, M.D., P.A., Appellants,

v.

Dorothy Louise STANLEY, Glenda Jean
Briscoe, William Allen Stanley, Rhonda
Athey, and Janice Gillman, Appellees.

No. 2–89–091–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 6, 1990.

Rehearing Overruled Feb. 26, 1991.

Michael L. Huddleston, Cowles & Thompson, Dallas, for appellants.

R. Jack Ayres, Jr., Dallas, for appellees.

Before WEAVER, C.J., and JOE SPURLOCK, II and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellants, in six points of error appeal the medical malpractice judgment granted to appellees for the death of Willie Hewell Stanley. We overrule appellants' points of error and affirm the trial court's judgment.

The deceased became the patient of appellant Dr. J. Dan Harvey, M.D., sometime in 1978 after becoming dissatisfied with the treatment of his previous physician. By the time Stanley went to Dr. Harvey, he had already suffered one heart attack and was permanently disabled from his job. Stanley saw Dr. Harvey fifty to sixty times until his death in 1981. Stanley was also hospitalized on numerous occasions for various ailments exclusive of his heart condition. At each of his hospital stays an E.K.G. was run, but Dr. Harvey failed to perform any of his own E.K.G.s apart from those of the hospital, nor did he consult the E.K.G.s from Stanley's hospital stays.

On October 13, 1981, in the early morning hours, Stanley's wife and daughter took him to the Flow Memorial Hospital ("Hospital") emergency room. Stanley was complaining of chest pain. In the emergency room, Stanley was diagnosed as having congestive heart failure. The evidence is conflicting on whether the attending emergency room physician consulted by phone with Dr. Harvey that morning, but Dr. Harvey did not come to the emergency room, nor was Stanley admitted to the Hospital.

Stanley saw Dr. Harvey in his office two days later and Dr. Harvey changed the medication which Stanley was taking from the emergency room visit.

During the next few weeks, Stanley continued to see Dr. Harvey because he required more nitroglycerin after meals and with walking. On December 14, 1981, Dr. Harvey decided to refer Stanley to Dr. Spencer, a cardiologist, for a stress test. The stress test was scheduled for 12:30 p.m. on December 16, 1981. After taking an E.K.G. on Stanley which had contraindication for performing the stress test, Dr. Spencer went ahead with the test. Dr. Spencer continued to hold Stanley up on the treadmill after he experienced difficulty in maintaining balance. Stanley eventually collapsed and died a short time later after C.P.R. was discontinued.

This suit was initially brought against the Hospital, John P. Spencer, M.D., and John P. Spencer, M.D., P.A., and J. Dan Harvey, M.D., and J. Dan Harvey, M.D., P.A. The plaintiffs entered into settlement

agreements with Dr. Spencer and the Hospital. The case was tried before a jury, which found both physicians negligent, attributing 85% of the negligence causing the occurrence to Dr. Harvey, and 15% to Dr. Spencer. The jury awarded $515,400 in actual damages, and $1,000,000 in exemplary damages. Judgment was entered in accordance with the jury verdict, awarding the additional sum of $423,083 for prejudgment interest.

Appellants bring six points of error. In point of error number one, appellants complain the trial court erred in allowing Dr. Garza, plaintiffs' medical expert witness, to testify as to the comparative responsibility of Drs. Harvey and Spencer. Dr. Garza testified that Dr. Harvey's treatment or lack of treatment was not within accepted standards of practice in Denton County, Texas, during the period in question and, in his opinion, Dr. Harvey had 80% to 90% of the responsibility because he, as the internist, had primary responsibility. He stated that the stress test given by Dr. Spencer was the culmination of a series of mistakes by Dr. Harvey.

Appellants argue that permitting Dr. Garza to testify as to the comparative responsibilities of Drs. Harvey and Spencer, invaded the province of the jury. Further, appellants state that Dr. Garza's testimony did not show a legal comparison which was necessary to his conclusion.

Actually, testimony of this nature was authorized by the Texas Supreme Court in *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987). The Supreme Court held therein that an expert could testify as to whether a medical defendant's conduct constituted "negligence," "gross negligence," or "heedless and reckless conduct" and that certain acts were the "proximate causes" of the injury. Appellants ask we ignore *Birchfield* and instead, adopt the court of appeals decision in *DeLeon v. Louder*, 743 S.W.2d 357 (Tex. App.—Amarillo 1987), *writ denied*, 754 S.W.2d 148 (Tex.1988) (per curiam). In *Louder*, the court of appeals held that a public safety trooper testifying about an auto accident could not testify about the

proximate cause of the accident because opinions on questions of law or mixed questions of law or fact invade a jury's prerogative and are, therefore, inadmissible. Even though the Supreme Court denied application for writ of error in *Louder*, it expressly disapproved and criticized the court of appeals' recitation on the admissibility of expert testimony. The Supreme Court specifically reiterated that admissibility of expert testimony on such ultimate questions is to be presented to a jury.

■ We cannot now intentionally ignore the directive of the Supreme Court and exclude the testimony of a medical expert regarding comparative responsibility between consulting physicians when testimony concerning the physician's own negligence and the proximate cause of an injury is permissible. Further, since the special issue, as submitted to the jury, did not make a distinction on a legal basis as to how the comparative negligence was to be allocated to the doctors, then the testimony of Dr. Garza was comprehensive enough to allow him to make the conclusions which he drew. Appellants' first point of error is overruled.

In the second point of error, appellants complain the jury's answer to Special Question No. 3 was against the great weight and preponderance of the evidence. Special Question No. 3 and the jury's answer was as follows:

QUESTION NO. 3:

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?

The percentages you find must total 100%. The negligence attributable to a person named below is not necessarily measured by the number of acts or omissions found.

| | | |
|---|---|---|
| A. Dr. J. Dan Harvey | 85 | % |
| B. Dr. John Spencer | 15 | % |

TOTAL: 100%

■ In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evi-

dence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■ Appellants want us to focus our review of the facts on the stress test which culminated in Stanley's death. Appellants ask us to nearly ignore Stanley's previous treatment over the three years he was Dr. Harvey's patient. Appellees counter appellants' argument by reminding us that the core of Dr. Harvey's negligence lay in his failure to consider or perform certain medically necessary procedures which would have avoided Stanley's eventual fatal heart attack and possibly prolonged his life for many more years. The evidence revealed Dr. Harvey was negligent in taking medical history; failed to perform analysis tests on Stanley; failed to hospitalize Stanley at critical times of his illness; and either misapplied certain heart medication or discontinued necessary medication. The recommendation for a stress test was the last act in a long line of decisions miscalculated by Dr. Harvey in Stanley's treatment.

■ Jurors are the exclusive judges of the weight and credibility of the witnesses. *Handy Andy, Inc. v. Rademacher,* 666 S.W.2d 300, 304 (Tex.App.—San Antonio 1984, no writ). The trier of fact has several alternatives available when presented with conflicting evidence: it may believe one witness and disbelieve others; it may resolve inconsistencies in testimony; or it may accept lay testimony over that of expert. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986), *opinion on re-*

*mand,* 735 S.W.2d 262 (Tex.App.—Beaumont 1987, no writ) (citing *Ford v. Panhandle & Sante Fe Ry. Co.,* 151 Tex. 538, 252 S.W.2d 561 (1952)); *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951); *Muro v. Houston Fire & Casualty Ins. Co.,* 329 S.W.2d 326 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.).

In this case, the jurors chose to believe the testimony of appellees' expert witness over that of appellants'. This is apparent from the percentage of fault to which it assigned each doctor's negligence.

Although this court may have concluded differently than the jury in this case, it is not the function of this court to determine the outcome as we may have decided.

When considering and weighing all of the evidence, we do not find that the jury's decision is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Whether this court finds the evidence more favorable to appellants is not at issue. Therefore, we will not overturn the jury's verdict.

Appellants' second point of error is overruled.

■ In appellants' third point of error they complain that the trial court abused its discretion in allowing appellees' lawyer to cross-examine their medical expert about allegations of malpractice against him in two pending lawsuits in which he was defended by appellants' trial counsel.

The record reflects, at the end of the cross-examination of Dr. Gibler by appellees' counsel, he was asked to explain his relationship with appellants' trial counsel, which revealed he was represented by Dr. Harvey's lawyer in his own malpractice cases. Although it has been held by the Beaumont Court of Appeals that such testimony is inadmissible, *see Watson v. Isern,* 782 S.W.2d 546 (Tex.App.—Beaumont 1989, writ denied), we do not find the extent of the testimony involved in this case to approach the vigor or length of the testimony in *Watson* which was ruled inadmissible. Further, though the record reflects the court's overruling of appellants' motion in limine to prevent appellees' attorney from

going into Dr. Gibler's relationship with appellants' trial counsel, we find that portion of Dr. Gibler's testimony complained of was elicited without objection by appellants during trial. As the Supreme Court has recently reminded us, it is incumbent on the opposing counsel to reurge such objection which the testimony is offered in order to preserve error. *See Clark v. Trailways*, 774 S.W.2d 644, 647 (Tex.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). Since we do not find trial objection to Dr. Gibler's testimony as to his relationship with defense counsel, we overrule appellants' third point of error.

■ Appellants next contend the evidence was insufficient to support the jury's finding of proximate cause in answer to Special Question No. 1. Under this point, appellants contend the acts of Dr. Spencer were an intervening and superseding cause of Stanley's death. As authority for their position, appellants cite to us the ruling in *Aerospatiale Helicopter Corp. v. Universal Health Serv. Inc.*, 778 S.W.2d 492 (Tex. App.—Dallas 1989, writ denied).

In *Aerospatiale*, a helicopter manufacturer sought contractual indemnity from the lessee of the helicopter for amounts it had expended to settle the wrongful death suits by the families of persons killed in a helicopter crash. The helicopter's number one engine cowling, which had been left open at take-off, came off in flight. In separating, it apparently snagged a governor, essentially taking that engine off-line. As designed, the helicopter automatically shifted all power to the number two engine. The helicopter continued flying. Sometime later, the pilot apparently noted from his instruments that the number two engine was running at a higher temperature than normal. Instead of following the correct procedure to handle the situation, the pilot unexplainably and intentionally broke a safety wire to shut off the fuel to the number two engine. The resulting loss of all power caused the helicopter to crash. The court of appeals held as a matter of law that the pilot's actions in ignoring standard operating procedures and in affirma-

tively overriding existing safety systems to thereby cause the crash, were not reasonably foreseeable by the manufacturer of the helicopter, thus diminishing the existence of proximate cause. *Id.* at 497.

Appellees obviously disagree with appellants' contention and direct us to the facts and authority outlined in *Brownsville Medical Center v. Gracia*, 704 S.W.2d 68 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), which involved claims against two hospitals. In *Gracia*, the first hospital failed to properly diagnose a minor patient, and the second hospital transferred the child to a third hospital when it discovered he was uninsured. The child died from undetermined causes eight days after being flown to the third hospital.

The first hospital argued that the evidence against it was insufficient to establish proximate cause of the child's death because the actions which took place after the child left its care were a "new and independent cause" which it could not have reasonably foreseen. *Id.* at 73. The appellate court held that there was sufficient evidence to find that the child's death was proximately caused by the negligence of the first hospital. The court noted, "The intervention of an unforeseen cause of injury does not necessarily mean there is a new and independent cause of such character as to constitute a superceding cause which will relieve a defendant from liability." *Id.* If the chain of causation is continuous or unbroken, even an *unforeseeable* intervening cause may be a concurring cause of the injury. *Id.* (citing *Teer v. J. Weingarten, Inc.*, 426 S.W.2d 610 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.)); *see also McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980); *Missouri Pac. R. v. American Statesman*, 552 S.W.2d 99, 103–04 (Tex.1977); *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970); *Ortiz v. Santa Rosa Medical Center*, 702 S.W.2d 701, 704 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

The jury in this cause was instructed on appellants' contention that Dr. Spencer's conduct was a new and independent cause.

But the jury did not believe this to be the case before them.

Based upon the record before us, Dr. Harvey could have foreseen the results of Stanley's being subjected to a stress test in his weakened condition. Moreover, as argued all along by appellees, Dr. Harvey's liability was not based solely or even principally upon his scheduling Stanley for the stress test. Dr. Garza testified that the medical records show Dr. Harvey followed a course of inadequate treatment that caused Stanley's death. Dr. Garza further testified that the stress test was only the final straw, the last mistake that resulted in Stanley's death at that moment. Appellants' argument is like that in the *Gracia* case. They argue that they cannot be held responsible because a doctor after him also acted negligently. This is simply not the case. The evidence shows appellants' failure to properly diagnose and treat Stanley's condition proximately caused his death.

■ The Texas Supreme Court has consistently held that the intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from the consequences of his negligence if "such negligence directly and proximately co-operates with the independent cause in the resulting injury." *McAfee v. Travis Gas Corp.*, 137 Tex. 314, 153 S.W.2d 442, 448 (1941); *Atchison v. Texas & Pacific Ry. Co.*, 143 Tex. 466, 186 S.W.2d 228, 232 (1945). The foreseeability element of proximate cause does not require that the wrongdoer anticipate the precise hazard or exact consequences that may grow out of the dangerous situation. *Missouri Pacific Ry.*, 552 S.W.2d at 103; *Clark*, 452 S.W.2d at 439 n. 2.

Though the testimony of appellees' medical expert witness, Dr. Garza, did not contain exact language pinpointing Dr. Harvey's treatment of Stanley as the cause of his death, it is easy to see that the jury could reach their decision based upon the totality of analysis. "Reasonable probability, in turn, is determinable by consideration of the substance of the testimony of the expert witness and does *not* turn on se-mantics or on the use by the witness of any particular term or phrase." *Insurance Co. of No. America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966) (emphasis added). Dr. Garza clearly testified Stanley was seriously ill when he first went to Dr. Harvey, but with proper medical care he would probably have lived ten or more years. Instead of providing the appropriate treatment, Dr. Harvey's substandard treatment caused Stanley's condition to deteriorate to the point where he could no longer be helped by surgery and materially shortened Stanley's life.

Appellants' point of error number four is overruled.

Appellants' points of error numbers five and six deal with gross negligence and exemplary damages. In response to question number two, the jury found that appellants' negligence, as previously found in question number one, was gross negligence. The jury then awarded to appellees $1 million as exemplary damages. Appellants complain in these two points of error that: 1) the evidence was factually insufficient to support the jury's finding of gross negligence (point number five); and 2) the trial court abused its discretion in granting appellees' trial amendment allowing appellees to recover $1 million in exemplary damages even though they had originally pled for $500,000 (point of error number six).

Appellants state in their brief that "To find that the evidence in this case is factually sufficient to meet the legal standard of gross negligence would be to lower that legal standard to the point of obliterating the distinction between ordinary negligence and gross negligence." As stated by the Supreme Court in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981):

> The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

Appellants complain that the evidence and testimony presented by appellees never

rose to the level of neglect and/or want of care established by *Burk Royalty* and, in fact, the conduct of Dr. Harvey was to the contrary. Appellants also complain that the testimony of Dr. Garza, appellees'. medical expert, was selective, deficient, and lacked proper predicate to establish gross conduct by Dr. Harvey. Appellants state that the Stanley's treatment by Dr. Harvey was only a more conservative approach to the handling of the deceased's heart problem than the more "aggressive" approach to which Dr. Garza would have ascribed. As such, we cannot affirm a finding of gross negligence when the complained of conduct consists entirely of a choice between accepted different approaches in treating a patient's medical condition.

Appellees remind us that the rule for determining the sufficiency of the evidence to support a jury's finding of gross negligence in a medical malpractice case requires consideration of all of the surrounding facts, circumstances, and conditions involved in a light most favorable to the party in whose favor the verdict was rendered, and all reasonable inferences are to be indulged in that party's favor. *Wall v. Noble*, 705 S.W.2d 727, 732 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.) (citing *Burk Royalty*, 616 S.W.2d at 920 and *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970)); *American Cyanamid Co. v. Frankson*, 732 S.W.2d 648, 657 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.).

█ To prove gross negligence, appellees must show that the defendant was consciously indifferent to appellees' rights, welfare, and safety. *Wall*, 705 S.W.2d at 732. In other words, it must be proven that "the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care." *Id.* This mental state may be inferred from actions. A plaintiff may prove gross negligence by proving that the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex.1987).

█ The evidence reflects that Dr. Harvey:

1) Failed to run any additional E.K.G.s on Stanley after the initial visit in 1979.

2) Failed to consult subsequent E.K.G.s which were run on Stanley by other doctors during this period of time.

3) Prescribed medication and drugs which were not appropriate for Stanley's heart condition.

4) Failed to control Stanley's blood pressure and angina pains.

5) Failed to come to the Hospital when Stanley needed his assistance to be admitted during a time when he was experiencing congestive heart failure.

6) Recommended Stanley for a stress test when his weakened condition would not tolerate such an endurance trial.

Though appellants emphasize that the difference in treatment lies in the approach to the problem, rather than actual neglect, it is not difficult for us to follow the jury's lead and find that Dr. Harvey's conduct was totally unacceptable and showed a conscious indifference to the deceased's welfare and safety. In light of the amount of evidence to support the jury's decision, we must affirm its answer to the question of gross negligence.

Apparently, the jury felt so strongly that Dr. Harvey was grossly negligent, that they doubled the amount of exemplary damages appellees' sought as special damages. The exemplary damages awarded by the jury necessitated a trial amendment on behalf of appellees in order to conform their pleadings with it.

Since our Supreme Court has recently spoken to this very point, we are now able to approach this problem with its guidance. In *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938 (Tex.1990), the plaintiff below, Greenhalgh, pleaded for $10,000 in actual damages and $100,000 in punitive damages; the jury awarded $8,000 in actual damages and $128,000 in punitive damages. Because Greenhalgh had pleaded for only $100,000 in punitive damages, he requested leave to amend his pleadings to conform the amount of damages to that found by the jury and supported by the evidence. In its responsive motion, Service

Lloyds alleged that the amendment was prejudicial because Service Lloyds had relied on the $100,000 amount in Plaintiff's pleadings in preparing for trial and in deciding whether to settle the case. The trial court allowed the post-verdict amendment. The court of appeals held that the trial court abused its discretion in allowing the amendment and reduced the punitive damages to $100,000.

■■■ The court of appeals reasoned that "because a defendant receives notice of the upper limit of punitive damages only by way of pleadings, it is an abuse of discretion to allow a post-verdict trial amendment increasing punitive damages when proper objections are made." *Greenhalgh*, 787 S.W.2d at 939.

The Supreme Court reversed the appellate court decision stating:

> The holding of the court of appeals ignores the mandates of the procedural rules regarding amendment of pleadings during trial. See TEX.R.CIV.P. 63 and 66.
>
> Not only did the trial court *not* abuse its discretion in granting the amendment, it would have been an abuse of discretion if the trial court had refused the amendment. Under Rules 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice, TEX.R.CIV.P. 63 and 66; *Hardin v. Hardin*, 597 S.W.2d 347, 350–51 (Tex. 1980) (Campbell, J., concurring); *see Food Source, Inc. v. Zurich Ins. Co.*, 751 S.W.2d 596, 599 (Tex.App.—Dallas 1988, writ denied); or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Hardin v. Hardin*, 597 S.W.2d 347 (Tex.1980). The burden of showing prejudice or surprise rests on the party resisting the amendment. *Patino v. Texas Employers Insurance Association*, 491 S.W.2d 754, 756 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.). Because Greenhalgh's amendment raised no new substantive matters and because there was no showing of surprise of prejudice

by Service Lloyds, the trial court properly granted leave to file the amendment.

> Service Lloyds relies on appellate court holdings that a trial court abuses its discretion in allowing a post-verdict amendment increasing damages to conform to the verdict. *Burk Royalty Co. v. Walls*, 596 S.W.2d 932, 938 (Tex.Civ.App.—Fort Worth 1980, *aff'd on other grounds*, 616 S.W.2d 911 (Tex.1981); *Winn–Dixie Texas, Inc. v. Buck*, 719 S.W.2d 251, 255 (Tex.App.—Fort Worth 1986, no writ). We disapprove these holdings because they directly conflict with Rules 63 and 66.

*Id.* (footnotes omitted).

The Supreme Court went on to conclude that:

> The language of Rule 63 makes it clear that without a showing of surprise the trial court must grant leave for a party to file the amendment when requested within seven days of trial or thereafter. Thus, a party's right to amend under Rule 63 is subject only to the opposing party's right to show surprise. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980). However, the trial court may conclude that the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial.
>
> An amended pleading that changes only the amount of damages sought does not automatically operate as surprise within the contemplation of Rule 63. *See Drury v. Reeves*, 539 S.W.2d 390, 394 (Tex.Civ.App.—Austin 1976, no writ). A party opposing an amendment increasing damages must present evidence to show that the increase resulted in surprise. Because Lloyds presented no evidence of surprise, the trial court properly allowed the amendment as required under Rule 63.

*Id.* at 940 (footnotes omitted).

In our case, appellants objected to appellees' motion for leave to file a trial amendment on the grounds that it would operate as an unfair surprise and would be prejudicial and against the interest of justice.

After a hearing on the motion, the district court granted the trial amendment.

The record does not reflect that the plaintiff requested a specific amount of punitive damages from the defendant in front of the jury. The exemplary damages are clearly the amount that the jury felt were required. Appellees' pleadings, at the time of trial, requested $2,000,000 in special damages and $500,000 in exemplary damages. The post-verdict amendment modified the total award to approximately $1.5 million. Appellants have not shown either in their response to appellees' motion, at the hearing on the motion, or in their brief, how they were prejudiced by the trial amendment allowing the award. Absent clear evidence to this end, then we cannot now find that the trial court abused its discretion in its ruling. We therefore overrule appellants' points of error numbers five and six.

We overrule appellees' cross-point which was dealt with in our previous mandamus opinion concerning the trial court's order refusing appellees' application for a turnover order. We note now that appellants hand-filed a supersedeas bond with the court for the total amount of the judgment which negates the necessity for a turnover order.

The judgment of the trial court is affirmed.